**CONTINENTAL COFFEE PRODUCTS CO. and Allen D. Duff, Petitioners,**

v.

**Juanita CAZAREZ, Respondent.**

No. 95–0827.

Supreme Court of Texas.

Argued Feb. 14, 1996.

Decided Dec. 13, 1996.

Rehearing Overruled Feb. 21, 1997.

A. Martin Wickliff, Jr., Barbara L. Johnson, Paul E. Hash, Houston, for Respondent.

Thomas N. Thurlow, Houston, Donna Roth, Spring, Jose Luis Garriga, Janine G. Howard, Richard P. Hogan, Jr., Houston, for Petitioners.

PHILLIPS, Chief Justice, delivered the opinion for a unanimous Court.

The principal question for our decision is what evidence is required for a court to find malice in order to award punitive damages for a violation of a statute creating an intentional tort. Juanita Cazarez sued her employer, Continental Coffee Products Company, and its employment manager, Alan D. Duff, for allegedly discharging her in retaliation for filing a workers' compensation claim in violation of TEX.REV.CIV.STAT.ANN. art. 8307c (repealed) (codified without substantive changes at TEX.LAB.CODE § 451.001–.003). The trial court, after a bench trial, rendered judgment awarding Cazarez actual damages of $150,000 and punitive damages of $500,000. The court of appeals, with one justice dissenting, affirmed, holding that the trial court properly exercised jurisdiction and that fac-

tually and legally sufficient evidence supported the trial court's findings that Continental violated the statute intentionally and with malice. 903 S.W.2d 70. We agree with the court of appeals that the trial court had jurisdiction. We also agree that there is some evidence that Continental and Duff violated section 451.001 in terminating Cazarez's employment.[1] However, in deciding that the evidence was legally and factually sufficient, the court of appeals relied in part on evidence that we hold is not probative. Moreover, we hold that the evidence is not legally sufficient to support a finding of actual malice, which is required to assess punitive damages for a retaliatory discharge. We therefore affirm in part and reverse in part the judgment of the court of appeals and render judgment that Cazarez take nothing on her claim for punitive damages.

I

Cazarez was employed from 1976 to 1991 by Continental, a wholly-owned subsidiary of Quaker Oats, as a production assistant performing primarily janitorial and maintenance duties. In April 1991, Cazarez suffered an on-the-job injury to her right ankle. She filed a workers' compensation claim in connection with the injury, missing seven months of work while on workers' compensation leave.

While Cazarez was out, Quaker Oats transferred Duff to Continental to be the new Employee Relations Manager. One of Duff's duties was monitoring the progress of those employees out while receiving workers' compensation benefits. Another of his duties was enforcing Continental's "three day no call/no show rule." Under this rule, an employee who is not absent on workers' compensation leave loses all seniority and other rights if he or she misses three days of work without properly notifying management. According to plant work rules, termination un-

der the three-day rule is considered a "voluntary quit." The three-day rule applies to employees receiving workers' compensation benefits as soon as they are released to return to work by their treating physician.

The exact date that Cazarez was released to come back to work, and Duff's knowledge of that release, are both highly disputed. The record contains three "Specific and Subsequent Medical Reports," each signed by Cazarez's treating physician, Dr. Brian Parsley. The first, dated September 30, 1991, states only that the *anticipated* date of Cazarez's return to full-time work is October 28, 1991. Duff testified that this was the only document he saw before he fired Cazarez on November 8, 1991. The second document, dated October 30, 1991, states that Cazarez was released to return to work on October 28, 1991, and was anticipated to return to work on that date. The third document, dated December 17, 1991, revises the release date to November 18, 1991.

Between June 1991 and October 28, 1991, Duff had continuing contact by telephone with Cazarez, Dr. Parsley, and the workers' compensation carrier handling Cazarez's claim. On October 28, 1991, Cazarez called Continental and informed Maize Villareal, Duff's assistant, that she was still awaiting "molded shoe" ankle supports she needed to return to work and that she was suffering from the flu. Duff's handwritten notes indicate that when he called Cazarez on Wednesday, October 30, 1991, to "check status," she told him that while her flu was better, she still had not received the ankle supports, so that she "probably" would return to work that Friday or the following Monday. The trial court found that Duff knew on October 30, 1991, that Cazarez could not return to work until she had received her ankle supports, which she did not in fact receive until after Continental fired her.

---

1. Section 451.001 states:
   A person may not discharge or in any manner discriminate against an employee because the employee has:
   (1) filed a workers' compensation claim in good faith;
   (2) hired a lawyer to represent the employee in a claim;

   (3) instituted or caused to be instituted in good faith a proceeding under Subtitle A; or
   (4) testified or is about to testify in a proceeding under Subtitle A.
   TEX.LAB.CODE § 451.001.

Duff's notes indicate that on that Monday, November 4, 1991, he "tried calling Juanita Cazarez at 1 p.m. to see why she wasn't at work," but there was no answer. Cazarez did not report to work or call Continental on that day or any day that week. On Tuesday, November 5, however, Duff's assistant, Villareal, visited Cazarez's home and was informed by her son that Cazarez was still sick. Later that week, Duff called and wrote to Cazarez to inform her that she was fired for violating the three-day rule. Although Duff presented evidence that this occurred on Friday, November 8, Cazarez testified that Duff called and fired her on November 7.

Cazarez claims, and the trial court found, that she was actually fired because she in good faith filed a workers' compensation claim. Based on this finding, the trial court concluded that Continental and Duff had violated the so-called Texas Anti–Retaliation Law.

## II

■ Continental and Duff first argue that the County Civil Court at Law No. 3 of Harris County lacked subject matter jurisdiction over Cazarez's claims. Cazarez brought her suit under article 8307c, which stated that "[t]he district courts of the State of Texas shall have jurisdiction, for cause shown, to restrain violations of this Act." TEX.REV.CIV.STAT.ANN. art. 8307c, § 3 (repealed 1993). As codified, this portion of the statute now states that "[a] district court may restrain, for cause shown, a violation of Section 451.001." TEX.LAB.CODE § 451.003. Continental and Duff argue that the statute confers exclusive jurisdiction upon the district courts to hear retaliatory discharge cases under the statute, relying on *Azar Nut Co. v. Caille,* 734 S.W.2d 667, 669 (Tex.1987); *Mingus v. Wadley,* 115 Tex. 551, 285 S.W. 1084, 1087 (1926); and *McGregor v. Clawson,* 506 S.W.2d 922, 928 (Tex.Civ.App.—Waco 1974, no writ). We disagree.

The statute before us states that district courts "shall" (old version) or "may" (codified version) "restrain violations of the Act." That language might indicate the Legislature's intent to allow injunctive relief under the statute. However, its plain meaning

does not express an intention to grant *exclusive* jurisdiction to district courts to grant certain relief or, in general, to decide cases under the statute. Stated another way, to the extent that statutory courts share *concurrent* jurisdiction with district courts, nothing in this statute limits or excludes that concurrent jurisdiction.

In *Sandy International, Inc. v. Hansel & Gretel Children's Shop, Inc.,* 775 S.W.2d 802 (Tex.App.—Dallas 1989, no writ), a similar jurisdictional issue arose under section 16.26(b) of the Texas Business and Commerce Code, which allows a trademark registrant to sue to enjoin a trademark infringement. This statutory provision formerly provided that the "District Court shall grant injunctions," *see* TEX.REV.CIV.STAT.ANN. art. 851–C (Vernon 1964) (repealed 1967), and at the time of the opinion provided that registrants "may sue for damages and to enjoin an infringement . . . in a district court having venue." *See* TEX.BUS. & COM.CODE § 16.26(b). The court refused to construe the statutory language as indicating legislative intent to limit jurisdiction to district courts, concluding instead that the intent of the statute was to provide registrants with the statutory means of enforcing their right to the exclusive use of their trademarks. *See Sandy Int'l,* 775 S.W.2d at 805–06. Finding nothing in the statutory language to indicate an intent to expressly limit jurisdiction to district courts, the court concluded that the county court at law had subject matter jurisdiction. *Id.* at 806. We approve of this reasoning and believe a similar approach is appropriate in this case. To construe the workers' compensation retaliation statute as limiting jurisdiction to district courts in the absence of an express indication of legislative intent would not further the Legislature's overall purpose in enacting article 8307c, "to protect persons who are entitled to benefits under the Worker's Compensation Law and to prevent them from being discharged by reason of taking steps to collect such benefits." *Carnation Co. v. Borner,* 610 S.W.2d 450, 453 (Tex.1980).

Sections 25.0003 and 25.1032 of the Texas Government Code are, respectively, the general grant of jurisdictional authority to statu-

tory county courts and the specific grant of jurisdictional authority to Harris County civil courts at law. Section 25.0003(c) states:

(c) In addition to other jurisdiction provided by law, a statutory county court exercising civil jurisdiction concurrent with the constitutional jurisdiction of the county court has concurrent jurisdiction with the district court in:

(1) civil cases in which the matter in controversy exceeds $500 but does not exceed $100,000, excluding interest, statutory or punitive damages and penalties, and attorney's fees and costs, as alleged on the face of the petition; and

(2) appeals of final rulings and decisions of the Texas Workers' Compensation Commission, regardless of the amount in controversy.

Section 25.1032(a) and (c) state:

(a) A county civil court at law in Harris County has jurisdiction over all civil matters and causes, original and appellate, prescribed by law for county courts, but does not have the jurisdiction of a probate court. A county civil court at law has jurisdiction in appeals of civil cases from justice courts in Harris County....

(c) A county civil court at law has exclusive jurisdiction in Harris County of eminent domain proceedings, both statutory and inverse, regardless of the amount in controversy. In addition to other jurisdiction provided by law, a county civil court at law has jurisdiction to:

(1) decide the issue of title to real or personal property;

(2) hear a suit to recover damages for slander or defamation of character;

(3) hear a suit for the enforcement of a lien on real property;

(4) hear a suit for the forfeiture of a corporate charter;

(5) hear a suit for the trial of the right to property valued at $200 or more that has been levied on under a writ of execution, sequestration, or attachment; and

(6) hear a suit for the recovery of real property.

Together, these provisions grant Harris County civil courts at law concurrent jurisdiction with district courts in civil cases in which the amount in controversy falls within a certain jurisdictional dollar limit for statutory county courts. We find nothing in these provisions to indicate that the Legislature intended to exclude retaliatory discharge cases from the county courts' concurrent jurisdiction. We reject Continental and Duff's argument that such an intent is evidenced by the fact that statutory county courts are specifically granted concurrent jurisdiction with district courts in "appeals of final rulings and decisions of the Texas Workers' Compensation Commission, regardless of the amount in controversy," under section 25.0003(c)(2). This specific reference to appeals of Commission rulings is necessary because the Legislature chose to broaden the statutory county courts' jurisdiction of these cases beyond the normal jurisdictional dollar limit on the amount in controversy.

■ Moreover, the cases cited by Continental and Duff do not support their argument that the statute confers exclusive jurisdiction on district courts to hear retaliatory discharge cases. *Azar Nut* addresses only whether punitive damages are available under the statute, while *Mingus* and *McGregor* construe statutes which contained mandatory venue provisions. *See Azar Nut,* 734 S.W.2d at 669 (considering district courts' power under the statute to "restrain violations" in context of punitive damages issue); *Mingus,* 285 S.W. at 1087 (construing clearly mandatory statute which provides that suit to set aside workers' compensation award shall be brought in the county where the injury occurred); *McGregor,* 506 S.W.2d at 928 (focusing on issue of whether particular venue provisions of State Bar Act for disbarment suits prevail over general provisions of Rule 257 applying to all civil actions). We therefore hold that the trial court had jurisdiction to decide this case, assuming that the amount in controversy is within the court's monetary limit of $100,000.[2]

**2.** Continental and Duff do not complain in this Court, as they did in the court of appeals, that

the trial court lacked jurisdiction because Cazarez fraudulently and in bad faith alleged an

Jurisdiction is based on the allegations in the petition about the amount in controversy. *See Richardson v. First Nat'l Life Ins. Co.*, 419 S.W.2d 836, 839 (Tex.1967). Cazarez's original petition sought actual damages of $100,000. Thus, the trial court properly acquired jurisdiction over this case based on the original petition. As a general rule, where jurisdiction is once lawfully and properly acquired, no later fact or event can defeat the court's jurisdiction. *See Dallas Indep. Sch. Dist. v. Porter*, 709 S.W.2d 642, 643 (Tex.1986); *Isbell v. Kenyon–Warner Dredging Co.*, 113 Tex. 528, 261 S.W. 762, 763 (1924).

If a plaintiff's original petition is properly brought in a particular court, but an amendment increases the amount in controversy above the court's jurisdictional limits, the court will continue to have jurisdiction if the additional damages accrued because of the passage of time. *See Mr. W. Fireworks, Inc. v. Mitchell*, 622 S.W.2d 576, 577 (Tex. 1981); *Flynt v. Garcia*, 587 S.W.2d 109, 110 (Tex.1979). Seven months after she filed her original petition, Cazarez amended her claimed actual damages to $250,000. In a second amendment, Cazarez dropped a claim for intentional infliction of emotional distress, but did not decrease the actual damages claim. Continental and Duff filed a plea to the jurisdiction challenging Cazarez's "passage of time allegations" on the sole basis that Cazarez's fraud and bad faith were clear on the face of her various pleadings.

In a hearing on their plea held during the trial, Cazarez was asked whether her state of mind and the way she felt about the defendants remained the same from the time she was fired through the time of the trial. She replied, "[i]t's getting worser [sic], everyday." In denying the plea, the court made the following relevant findings of fact:

2. Defendant was permitted the opportunity to present evidence in an attempt to show that the allegations in Plaintiff's Original Petition were made fraudulently or in bad faith.

3. Defendant called Juanita Cazarez to the witness stand for the foregoing purpose.

4. The evidence did not show that the allegations in Plaintiff's Original Petition were made fraudulently or in bad faith.

5. The evidence presented showed that the increased damages over the jurisdictional limit had accrued due to the passage of time.

We agree with the court of appeals that in the absence of any proof to support Continental and Duff's claims, Cazarez's mere allegation of damages in excess of the court's jurisdictional limits in the amended petition does not deprive the trial court of jurisdiction. *See Cantu v. J. Weingarten's, Inc.*, 616 S.W.2d 290, 291 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Where the plaintiff's original and amended petitions do not affirmatively demonstrate an absence of jurisdiction, a liberal construction of the pleadings in favor of jurisdiction is appropriate. *See Peek v. Equipment Serv. Co.*, 779 S.W.2d 802, 804 (Tex.1989). Here, while the additional actual damages alleged by Cazarez in her amended petitions may raise some suspicion, there is neither anything on the face of those petitions suggesting nor any evidence in the record proving that the amount in controversy was fraudulently alleged. In such a case, the averments in the petition control. *See Tidball v. Eichoff*, 66 Tex. 58, 17 S.W. 263, 263 (1886) (in absence of pleading and proof of fraudulently alleged jurisdictional amount in controversy, jurisdiction is determined by the averments in the petition).

This Court has previously voiced its concerns over the difficulties created for the bench, the bar, and the public by the patchwork organization of Texas' several trial courts. As Thomas Paine observed: "[T]he more simple anything is, the less liable it is

---

amount in controversy in her original petition in order to stay within the jurisdictional limits of the court, alleging additional damages in her amended petition that were not due merely to the passage of time. We are mindful, however, that subject matter jurisdiction is never presumed

and cannot be waived. *See Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex.1993). We therefore revisit this issue to determine whether the trial court properly exercised jurisdiction over the case.

to be disordered, and the easier repaired when disordered." PAINE, COMMON SENSE 3 (1776). This case is yet another confirmation that "confusion and inefficiency are endemic to a judicial structure with different courts of distinct but overlapping jurisdiction." *Camacho v. Samaniego*, 831 S.W.2d 804, 811 (Tex.1992). While we question the propriety of a limited jurisdiction court rendering a judgment awarding damages that are one hundred and fifty percent of its maximum jurisdictional limit, we cannot say, on the record before us, that the trial court lacked jurisdiction.

## III

■■■ Continental and Duff next argue that there is no evidence to support the trial court's finding that Continental and Duff fired Cazarez in violation of section 451.001. In reviewing Continental and Duff's "no evidence" claim, we must consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences. *See Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex.1993); *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). Anything more than a scintilla of evidence is legally sufficient to support the finding. *See Browning–Ferris*, 865 S.W.2d at 928; *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). Where circumstantial evidence is relied upon, and the circumstances are equally consistent with either of two facts, however, no more than a scintilla of evidence supports a finding and a "no evidence" point must be sustained. *See Litton Indus. Prods., Inc. v. Gammage*, 668 S.W.2d 319, 324 (Tex.1984).

This Court has never directly articulated what evidence is necessary to prove a retaliatory firing under section 451.001. In *Texas Department of Human Services v. Hinds*, 904 S.W.2d 629 (Tex.1995), however, we announced the standard of causation in cases involving alleged violations of the Whistleblower Act. Like the anti-retaliation statute before us, that law requires the plaintiff to prove that the alleged discrimination occurred "because" of the protected activity. Although the Whistleblower Act involves the good faith reporting of a violation of the law

to an appropriate law enforcement authority, while the Anti–Retaliation Law involves firing or otherwise discriminating against an employee subsequent to that employee's filing of a workers' compensation claim, *compare* TEX. GOV'T CODE § 554.002 *with* TEX. LAB.CODE § 451.001, the same principles should apply to both. Thus, in *Hinds* we explored the use of the "prescriptive word, 'because'," in the Whistleblower Act and several statutes of the same general nature as the Whistleblower Act, including section 451.001. *Hinds*, 904 S.W.2d at 633. We held that "the standard of causation in whistleblower and similar cases should be that the employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." *Id.* at 636. Similar cases include actions under the Anti–Retaliation Law, like this one. We concluded that the trial court in *Hinds* erred by merely asking the jury whether the defendant discriminated against Hinds "in retaliation for his report." *Id.* at 637. We prescribed the following jury instruction:

An employer does not discriminate against an employee for reporting a violation of law, in good faith, to an appropriate law enforcement authority, unless the employer's action would not have occurred when it did had the report not been made.

*Id.* A similar instruction should be given in actions under the Anti–Retaliation Law.

■■■ The court of appeals did not refer to *Hinds* in its opinion in this case, which was released only one week after *Hinds*. With regard to its legal and factual sufficiency review of actual damages, and apparently without taking *Hinds* into account, the court of appeals held that in attempting to prove a violation of section 451.001:

A plaintiff does not have to prove that her discharge was solely because of her workers' compensation claim. *Santex, Inc. v. Cunningham*, 618 S.W.2d 557, 559 (Tex. Civ.App.—Waco 1981, no writ). She merely has to establish the "causal connection" between her discharge and the filing of a workers' compensation claim as an element of her prima facie case. *Investment Properties Management, Inc. v. Montes*, 821

S.W.2d 691, 694 (Tex.App.—El Paso 1991, no writ). Circumstantial evidence, and the reasonable inferences from such evidence, can prove the causal connection. *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 658 (Tex.App.—El Paso 1989, writ denied). Once the link is established, it is the employer's burden to rebut the alleged discrimination by showing there was a legitimate reason behind the discharge. *Hughes Tool Co. v. Richards,* 624 S.W.2d 598, 599 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), *cert. denied,* 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982).

Circumstantial evidence sufficient to establish a causal link between termination and filing a compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Palmer v. Miller Brewing Co.,* 852 S.W.2d 57, 61 (Tex.App.—Fort Worth 1993, writ denied); *Montes,* 821 S.W.2d at 694–95; *Paragon Hotel Corp.,* 783 S.W.2d at 658. 903 S.W.2d at 77–78. Neither party has properly questioned these standards.[3] Whether one uses the *Hinds* standard or the standard articulated by the court of appeals, however, there is some evidence to support the trial court's finding that Cazarez was fired in violation of section 451.001.

Continental asserts that Cazarez was fired for violating the three-day rule. In *Texas Division–Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 313 (Tex.1994) (per curiam), we held that "[u]niform enforcement of a reasonable absence-control provision, like the three-day rule in this case, does not constitute retaliatory discharge." The three-day rule in *Carrozza* was essentially identical to the three-day rule in the present case. An employer who terminates an employee for violating such a rule cannot be liable for retaliatory discharge as long as the rule is uniformly enforced. This conclusion follows from our holding in *Hinds.* If an employee's termination is required by the uniform enforcement of a reasonable absentee policy, then it cannot be the case that termination would not have occurred when it did but for the employee's assertion of a compensation claim or other conduct protected by section 451.001. Thus, if Continental enforced the rule uniformly, and if Cazarez violated it, then Cazarez could not have been terminated in violation of the Anti–Retaliation Law.

The three-day rule did not apply while Cazarez was on compensation leave. Cazarez was released to return to work October 28, and she told Duff she would probably return November 1 or 4. Cazarez did not report to work or call in on either day. On November 5 Cazarez's son told Duff's assistant that his mother was still sick, and by Duff's admission, this satisfied the three-day rule. Duff testified that Cazarez did not report to work or call in on November 6, 7, or 8, and that he fired her on the 8th. However, Cazarez testified quite positively that Duff called her on November 7 to tell her that she had been terminated. Crediting Cazarez's testimony, as we must, there is some evidence that she did not violate the three-day rule.

We agree with Continental and Duff, however, that the court of appeals erred in its reliance on legally justified conduct as evidence of discrimination under the statute. Specifically, the court of appeals relied on these facts as indicating a "negative attitude" on the part of Continental and Duff towards Cazarez's injuries:

Continental's application for employment asked whether the applicant had ever been on workers' compensation;

---

**3.** In a post-submission brief, Continental and Duff argue only, and for the first time, that under *Hinds* Cazarez should bear the burden of proving that her filing of a workers' compensation claim was the *sole cause* of her termination. Not only is that argument waived, it is also incorrect. We explicitly held in *Hinds* that under the Whistleblower Act, "the report need not be the employer's sole motivation, but it must be such that without it the discriminatory conduct would not have occurred when it did." *Hinds,* 904 S.W.2d at 631.

Duff's file questioned whether Cazarez's ankle injury might actually have been caused by back or knee problems, or by wearing improper shoes;

Duff's file indicated regular communication with Cazarez, her doctor, and the insurance carrier during the period she was out on workers' compensation, but no contact during the three-day absence period from November 4 to 8, 1991; and

Cazarez's "impression" was that Duff wanted her back at work instead of at home receiving workers' compensation.

903 S.W.2d at 78.

None of these facts are probative. Under the Texas Workers' Compensation Act, an employer is authorized to obtain information about an applicant's prior injuries upon written authorization from the applicant, *see* TEX. LAB.CODE § 402.087, and to contest the cause of alleged on-the-job injuries and the compensability of certain injuries. *See* TEX.LAB. CODE Chapter 410. Duff's communications prior to October 28, 1991, are consistent with Cazarez's status as an employee out on workers' compensation leave whom Duff had a responsibility to monitor. Once she was released, and the three-day rule applied, it was her duty to notify management about her absences, not management's duty to contact her. Finally, we have held that an employee's subjective beliefs "are no more than conclusions" and do not raise a fact issue precluding summary judgment in a retaliatory discharge action under the Workers' Compensation Law. *See Texas Division–Tranter,* 876 S.W.2d at 314.

Moreover, the court of appeals also erred by relying on these meaningless facts as evidence that Continental and Duff's proffered reason for the termination was false:

Duff characterized the termination as a "voluntary quit" to the Texas Employment Commission ("TEC"); and

Cazarez did not call in every three days during the time she was out on workers'

compensation leave and no action was taken under the three-day rule against her. 903 S.W.2d at 78. Duff's characterization of Cazarez's termination for violation of the three-day rule as a "voluntary quit" before the TEC is also not evidence that his reason for firing her was false, as this designation was consistent with company work rules.

Continental offers no explanation for Cazarez's termination other than enforcement of the three-day rule. Because there is some evidence that Continental's only explanation was false, and that Duff expressed doubt that Cazarez had gone to see a doctor, the district court could infer that Cazarez was terminated in violation of section 451.001

## IV

Continental and Duff finally argue that there is no evidence to support the trial court's award of punitive damages. We agree.

The trial court found that Continental and Duff acted intentionally, willfully and maliciously in wrongfully discharging Cazarez. In affirming the trial court's judgment, the court of appeals failed to articulate exactly what definition of malice it was using in its legal sufficiency review.[4] Perhaps that failure contributed to the court's error in upholding the punitive damages award.

The parties here agree that the plaintiff must prove that her employer acted willfully and with malice to recover punitive damages under section 451.002. In our jurisprudence, malice may be either actual or implied. Actual malice is characterized by "ill-will, spite, evil motive, or purposing the injuring of another." *Clements v. Withers,* 437 S.W.2d 818, 822 (Tex.1969). Implied or legal malice, on the other hand, exists when wrongful conduct is intentional and without just cause or excuse. *See, e.g., U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214, 222 (Tex.App.—Waco 1993, writ denied); *LaCoure v. LaCoure,* 820 S.W.2d

---

**4.** We note that the Texas Legislature has redefined malice as it relates to the recovery of exemplary damages in certain causes accruing on or after September 1, 1995. *See* TEX.CIV.PRAC. & REM. CODE § 41.001(7). However, this provision, like all of Chapter 41 of the Texas Civil Practices and

Remedies Code, which sets out the statutory requirements for the imposition of exemplary damages, does not apply to actions brought under the workers' compensation laws of this state (Title 5, Labor Code). *See* TEX.CIV.PRAC. & REM.CODE § 41.002(b)(3).

228, 235 (Tex.App.—El Paso 1991, writ denied); *Transfer Prods., Inc. v. TexPar Energy, Inc.,* 788 S.W.2d 713, 715 (Tex.App.—Corpus Christi 1990, no writ); *Speed v. Eluma Intern., Inc.,* 757 S.W.2d 794, 799 (Tex. App.—Dallas 1988, writ denied); *Top Value Enters., Inc. v. Carlson Mktg. Group, Inc.,* 703 S.W.2d 806, 813 (Tex.App.—El Paso 1986, writ ref'd n.r.e.); *Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 687 S.W.2d 8, 12 (Tex.App.—Dallas 1984, writ ref'd n.r.e.); *Pace v. McEwen,* 574 S.W.2d 792, 801 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.); *Courtesy Pontiac, Inc. v. Ragsdale,* 532 S.W.2d 118, 121 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). *See also Texas Beef Cattle Co. v. Green,* 921 S.W.2d 203, 210 (Tex.1996) (discussing distinction between actual and legal malice as it affects justification defense to a tortious interference with contract claim).

The type of malice necessary to support punitive damages varies with the nature of the wrongful act at issue in any given category or particular type of case. In some types of cases a finding of actual malice is necessary to support exemplary damages, while in others mere legal malice is sufficient. Thus, in *Clements,* we disapproved of a trial court's instruction allowing the jury to assess punitive damages for interference with contract upon a finding that defendants committed an intentional wrong, stating:

> Actual malice need not be shown to recover compensatory damages for the tort of interference with an existing contractual relationship. Intentional and knowing interference must be shown, but there may be liability even though the interferor's motive be to save money for himself or another. On the other hand, to support the recovery of punitive damages in such a case, there must be a finding of actual malice: ill-will, spite, evil motive, or purposing the injuring of another. The exis-

tence of such malice may not be necessary in a case where the defendant's acts are accompanied by fraud or other aggravating circumstances.

*Clements,* 437 S.W.2d at 822 (citations omitted). We acknowledged, however, that for "an intentional striking [for example], words such as the trial court used would describe the purpose or intention which it is the office of punitive damages to punish." *Id. See Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984) (malice may be inferred to recover exemplary damages in libel per se cause of action).

■ The statute before us provides a remedy for discrimination by an employer on the basis of an employee's filing or pursuing in good faith a workers' compensation claim.[5] This cause of action, which is in the nature of an intentional tort, "must be viewed as an exception to the traditional doctrine of 'employment at will' found in Texas law." Sullivan, *Retaliatory Firings: The Remedy Under the Texas Workers' Compensation Act,* 19 Tex. Tech L.Rev. 85, 86 (1988). Where a statute creates a liability unknown to the common law, "the statute will be strictly construed in the sense that it will not be extended beyond its plain meaning or applied to cases not clearly within its purview." *Dutcher v. Owens,* 647 S.W.2d 948, 951 (Tex. 1983).

■ We find nothing to indicate that the Legislature intended that heightened conduct necessary for the imposition of punitive damages under the Texas Anti–Retaliation law may be implied from the employer's intentional wrongdoing, or, to put it more bluntly, that punitive damages are appropriate for every violation of the statute. Indeed, unlike many other statutes which explicitly provide for the imposition of punitive damages, some of which set out requirements for the exemplary damage award,[6] the statute before us provides only for "reasonable damages in-

---

**5.** Specifically, the statute states:

(a) A person who violates Section 451.001 is liable for reasonable damages incurred by the employee as a result of the violation.

(b) An employee discharged in violation of Section 451.001 is entitled to reinstatement in the former position of employment.

(c) The burden of proof in a proceeding under this section is on the employee.

Tex.Lab.Code § 451.002.

**6.** *See, e.g.,* Tex.Bus. & Com.Code § 18.09(b) (buyer injured by credit service organization's prohibited conduct may be awarded punitive damages); Tex.Bus. & Com.Code § 27.01(c), (d) (person who commits real estate or stock transaction fraud

curred by the employee as a result of the violation" and for "reinstatement in the former position of employment." TEX.LAB.CODE § 451.002(a), (b). We recognize that an employer's violation of section 451.001 is an unlawful and wrongful act. Yet, in most types of cases,

> [t]he fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful.

*Jones v. Ross*, 141 Tex. 415, 173 S.W.2d 1022, 1024 (1943) (quoting 25 C.J.S. Damages § 123), *cited with approval in Ware v. Paxton*, 359 S.W.2d 897, 899 (Tex.1962), and *Southwestern Inv. Co. v. Alvarez*, 453 S.W.2d 138, 141 (Tex.1970).

■■■ We therefore hold that actual malice must be shown before punitive dam-

ages may be assessed against an employer for violating section 451.001. By requiring evidence of ill-will, spite, or a specific intent to cause injury to the employee, courts will ensure that only egregious violations of the statute will be subject to punitive awards. As we stated in *Transportation Insurance Company v. Moriel*, 879 S.W.2d 10, 18 (Tex. 1994):

> The reason the law of torts recognizes compensation, rather then punishment, as its paramount objective is that civil punishment can result in overdeterrence and overcompensation. Every tort involves conduct that the law considers wrong, but punitive damages are proper only in the most exceptional cases.

■■■ The trial court found that Duff and Continental acted maliciously in firing Cazarez. We find no evidence of ill-will, spite, or a specific intent to harm Cazarez in this record, however. Duff had never met Cazarez before he fired her for violation of the three-day rule, nor did he even review her file before the firing. None of the evidence

with actual knowledge of falsity, or has actual awareness that such fraud has been committed, is liable to person defrauded for exemplary damages); TEX.CIV.PRAC. & REM.CODE § 71.009 (exemplary damages may be recovered for wrongful death caused by wilful act or omission or gross negligence of defendant); TEX.CIV.PRAC. & REM. CODE § 81.004(b) (prevailing plaintiff in action against mental health services provider for sexual exploitation of patient or former patient may recover exemplary damages); TEX.CIV.PRAC. & REM. CODE § 83.004 (claimant who prevails in stalking action may recover, subject to Chapter 41, exemplary damages); TEX.CIV.PRAC. & REM.CODE § 123.004(4) (person who establishes cause of action for interception of communication is entitled to punitive damages); TEX.FAM.CODE § 42.006(b) (person liable for interference with possessory right to a child who acted with malice or intent to cause harm may be liable for exemplary damages); TEX. GOV'T CODE § 551.146(a)(2)(C) (individual, corporation, or partnership that knowingly discloses certified agenda or tape recording of meeting closed to public under Open Meetings Chapter is liable for, at the discretion of the trier of fact, exemplary damages); TEX. HEALTH & SAFETY CODE § 161.134(d) (prevailing plaintiff in suit against hospital, mental health facility, or treatment facility for retaliation against employee for reporting a violation of law may recover exemplary damages); TEX. HEALTH & SAFETY CODE § 161.135(d) (prevailing plaintiff in suit against hospital, mental health facility, or treatment facility for retaliation against nonemployee for reporting a violation of law may recover exemplary damages); TEX.

HEALTH & SAFETY CODE § 242.133(b)(2)(petitioner in suit against "institution" under Nursing and Convalescent Homes Chapter, or the owner or employee of same, for suspending or terminating employment or otherwise discriminating against petitioner for reporting abuse or neglect of resident may recover exemplary damages); TEX HEALTH & SAFETY CODE § 242.1335(b)(3) (resident of "institution" under Nursing and Convalescent Homes Chapter who is retaliated or discriminated against by an institution when the resident, his guardian, or any other person reports abuse or neglect is entitled to sue for exemplary damages); Tex.Lab.Code § 21.2585(a)(2) (court may award punitive damages on finding of unlawful intentional employment practice); Tex.Prop. Code § 26.013(a)(3) (person who uses a deceased's name, voice, signature, photograph, or likeness in unauthorized manner is liable to owner of the property right for the amount of exemplary damages that may be awarded); Tex.Prop. Code § 92.164(a)(4)(C) (under certain circumstances, tenant whose landlord fails to comply with written request to install or rekey certain security devices as required may file suit and obtain judgment including punitive damages if tenant suffers actual damages); Tex.Prop.Code § 301.153(1) (court may award punitive damages upon finding that discriminatory housing practice has occurred or is about to occur). Cf. Tex. Gov't Code § 554.003 (Vernon Supp.1996) (1995 amendment of Whistleblower Act deleted explicit allowance for punitive damages).

establishing the violation, which we have recounted in some detail, suggests that this is the type of egregious violation for which punitive damages are appropriate. Much of that evidence, in fact, was simply not probative to either establish a violation or malice. Therefore, we conclude that there is no evidence to support the trial court's finding that Continental and Duff acted with malice.

Accordingly, we hold that the court of appeals did not err in finding some evidence to support the trial court's award of actual damages. We are troubled, however, by the amount of non-probative evidence cited by the court of appeals in determining that the jury's verdict was supported by factually as well as legally sufficient evidence. But this Court cannot determine whether the remaining probative evidence is factually sufficient. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986). Continental and Duff have not asked us to remand the cause to the court of appeals for a second factual sufficiency review of the actual damages award, and Texas Rule of Appellate Procedure 180 does not permit us to remand to the court of appeals for another evidentiary review in the interest of justice. Therefore, we affirm that part of the court of appeals' judgment affirming the trial court's actual damages award. We reverse that part of the court of appeals' judgment affirming the trial court's punitive damages award, however, and render judgment that Cazarez take nothing thereon.