**DALLAS AREA RAPID TRANSIT,**
Appellant,

v.

**Charles JOHNSON, Appellee.**

No. 05–98–01853–CV.

Court of Appeals of Texas,
Dallas.

July 26, 2001.

---

Hyattye O. Simmons, Dallas, for Appellant.

Scott H. Richard, Law Office of Scott Richard, Bedford, for Appellee.

Before Justices LAGARDE, MOSELEY, and FARRIS.[1]

## OPINION

Opinion by Justice DAVID F. FARRIS (Assigned).

This is an employer's appeal of an adverse judgment in an employee's suit alleging his employer discharged him because he had filed a worker's compensation claim. *See* TEX. LAB.CODE ANN. § 451.001 (Vernon 1996). Charles Johnson sued Dallas Area Rapid Transit (DART) after it discharged him from his job as a bus driver. Before bringing this suit, Johnson pressed his demand for continued employment through the levels of review available under DART's grievance procedure, concluding with a hearing before its Trial Board.

We address only DART's second issue asserting in part that there was no evidence to establish a necessary causal connection between Johnson's worker's compensation claim and the conduct Johnson alleged to be unlawful. We sustain issue two because the circumstantial proof supporting Johnson's claim was, as a matter of law, no evidence.

At the center of this dispute are DART company policies related to extended absence from work and the grievance procedures whereby a DART employee can appeal a discharge. Section 5.4 of DART's Personnel Policy Manual provided that an employee was subject to discharge if, be-

---

1. The Honorable David F. Farris, Retired Justice, Second District Court of Appeals, Fort Worth, Texas, sitting by assignment.

cause of injury or illness, the employee was unable to return to his regular job for more than 179 calendar days or accumulated more than 131 days of lost time from the date of the original injury. However, DART had an unwritten policy that an employee who exceeded these time limits would nevertheless be retained or reinstated if the employee produced a full release to return to work at any stage of the grievance process. The fifth and last step of the grievance process was a hearing before DART's Trial Board.

Johnson was terminated after being unable to return to his regular job for 623 calendar days. After receiving notice of his termination, Johnson went through the first four steps of the grievance process afforded DART employees, losing at each step. Johnson did not produce a release at any of these steps. Ultimately, Johnson appealed his dismissal to the Trial Board. Johnson was scheduled to appear for a hearing before a panel of the Trial Board on April 20, 1995. That morning, the Trial Board agreed to continue the hearing because Johnson's attorney was unable to appear. The hearing was later rescheduled for June 8. Between April 20 and June 8, Johnson obtained a full work release from his doctor, which he produced at the June 8 hearing.

The Trial Board was aware of DART's unwritten policy on medical releases. Edgar McMillan, a member of the Trial Board, testified that he chaired the Johnson hearing. A DART manager testified at the hearing that his superiors had instructed him that an employee who presented a full work release at any stage of the grievance process would be allowed to return to work. The Board's decision quotes DART's Assistant Vice–President of Bus Transportation as stating, "We were told early on in this process that during the grievance procedure, that if an employee submitted something from his attending physician that releases him back to his job and since he was discharged for being disqualified and at this time he's not then we should reinstate him." The trial stipulations and testimony of DART personnel were consistent with the evidence presented at the Board hearing.

The Trial Board denied Johnson's grievance and sustained his termination because he did not have a full work release on the originally scheduled date of his hearing. The Board's decision concluded that reasonable restrictions could be placed upon the unwritten policy of accepting medical releases at any stage of appeal and that allowing one to submit a medical release at a second hearing date was unreasonable.

Johnson filed suit in district court, alleging DART discharged him because he had filed a worker's compensation claim and that his discharge violated section 451.001 of the labor code. Following a bench trial to review the Trial Board's decision, the trial court found that Johnson was discriminated against because he filed a worker's compensation claim.

■ The purpose of section 451.001 is to protect persons entitled to benefits under the Worker's Compensation Act by preventing them from being discharged for filing claims to recover those benefits. *See Trico Techs. Corp. v. Montiel,* 949 S.W.2d 308, 312 (Tex.1997) (per curiam). To prove his discharge violated section 451.001, Johnson had to establish a causal connection between his discharge and the filing of his claim. *See Continental Coffee Prods. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996). In other words, Johnson had to prove that without his filing a worker's compensation claim, his discharge would not have occurred. *Id.* Because the purpose of section 451.001 is to prevent employees from being discharged for filing worker's compensation claims, circumstan-

tial evidence and the reasonable inferences from that evidence may prove the causal connection. *Id.* at 451. But when circumstances are as consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred. *Id.* at 450; *Litton Indus. Prods., Inc., v. Gammage*, 668 S.W.2d 319, 324 (Tex.1984). Such evidence will not withstand a no-evidence challenge. *See Blount v. Bordens, Inc.* 910 S.W.2d 931, 933 (Tex.1995) (per curiam).

■ *Cazarez* lists five examples of circumstantial evidence that may be sufficient to establish the necessary causal connection:

(1) knowledge of the compensation claim by the person who terminated the employee;

(2) expression of a negative attitude toward the employee's injured condition;

(3) failure to adhere to established company policies;

(4) discriminatory treatment in comparison to similarly situated employees; and

(5) evidence that the reason for the discharge was false.

*See Cazarez* 937 S.W.2d at 451; *Vallance v. Irving C.A.R.E.S., Inc.*, 14 S.W.3d 833, 837 (Tex.App.—Dallas 2000, no pet.). In this case, knowledge of Johnson's compensation claim was evident at every stage of the grievance process. The testimony that a release would be accepted at any level is some evidence DART failed to adhere to its own policy when it refused to accept Johnson's work release at the second hearing.[2] However, there is no evidence anyone expressed a negative view about either Johnson's injured condition or the fact that he had filed a workers compensation claim. There was no evidence a similarly situated employee had received disparate treatment. Furthermore, there was no evidence the reason given for Johnson's discharge was false.

■ Neither *Cazarez*, the cases it cites, nor the cases following it suggest that the five examples of circumstantial evidence are necessary elements of a section 451.001 cause of action, all of which must be proved. Nonetheless, a plaintiff who relies upon circumstantial evidence still must prove the circumstances are more consistent with a section 451.001 violation than not. Johnson did not meet this burden because the circumstantial evidence that is consistent with his right to recovery is equally consistent with the Trial Board's decision that it was unreasonable to extend the unwritten board policy on medical releases past the Board's first scheduled hearing. Whether or not the Board acted properly in refusing to abide by DART's unwritten but admitted policy of accepting medical releases at any stage in the appeal process, there is no more than a scintilla of evidence that the Board's decision was made in retaliation for Johnson's pursuing worker's compensation benefits.

Because sustaining DART's second issue disposes of this appeal, we need not address its remaining issues. *See* Tex.R.App. P. 47.1. We reverse the judgment of the trial court and render judgment that Johnson take nothing.

---

2. We reject DART's argument that the Trial Board's act cannot be attributed to DART.