REVERSE and RENDER; Opinion issued October 31, 2012



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00708-CV

A-DELTA OVERNIGHT LEGAL REPRODUCTION SERVICES CORPORATION
D/B/A A-LEGAL COPY & RECORD SERVICES, Appellant

V.

DAVID W. ELROD, PLLC, Appellee

On Appeal from the 95th Judicial District Court
Dallas County, Texas
Trial Court Cause No. 09-09815

# MEMORANDUM OPINION

Before Justices Morris, Francis, and Murphy
Opinion By Justice Francis

This case involves competing breach of contract claims between A-Delta Overnight Legal Reproduction Services Corporation d/b/a A-Legal Copy & Record Services and David W. Elrod, PLLC. Following a bench trial, the trial court found in Elrod's favor and awarded it lost profit damages and attorney's fees. On appeal, A-Legal contends the trial court erred in (1) awarding lost profits because Elrod failed to plead and prove such damages, (2) allowing Elrod to reopen the evidence to allow additional proof regarding lost profits, and (3) awarding attorney's fees without evidence of presentment or damages. Because we conclude there was no evidence of lost profits, we reverse the trial court's judgment and render a take-nothing judgment on Elrod's breach of

contract claim.

Elrod describes itself as a small trial and litigation law firm. A-Legal is a company that provides litigation support services. On January 26, 2009, Elrod hired A-Legal to perform electronic discovery work on the "R Project" and delivered to A-Legal ten computer disks and a box of documents to begin work. Two days later, Elrod pulled the job when A-Legal doubled the price it previously quoted. That night, A-Legal delivered to Elrod a hard drive that it contended contained the requested work. Elrod said the work was performed after it had pulled the job and, regardless, the drive did not contain the work requested. Five days after pulling the job from A-Legal, Elrod hired a new vendor to perform the work at a lower price. That same day, A-Legal billed Elrod $15,000 for its work on the project. When Elrod refused to pay the bill, A-Legal sued for breach of contract. Elrod counterclaimed for breach of contract, among other things. The contract claim asserted A-Legal secretly outsourced the work to an unknown and unapproved vendor in violation of an agreement to perform the work in-house and the work was not performed as requested.

At trial, each side contended the other breached the agreement. A-Legal claimed damages in the amount of the unpaid bill. Elrod claimed damages from lost revenue and lost business opportunities in dealing with A-Legal's breach. Specifically, attorney Susan Nassar, who worked on the "R Project" and hired A-Legal to perform the discovery work, testified at length about the events that occurred during the two days A-Legal was on the job and, in particular, the various communications she had with A-Legal representatives. She said that over the two-day period, she spent "a number of hours" dealing with A-Legal on the situation. Nassar said, "once the whole thing blew up," she spent an hour in discussions with A-Legal and then trying to determine what to do with the project. She had to find a new vendor because a discovery deadline was near. On February 2, she hired a new vendor that had been recommended by her paralegal on the day of A-Legal's

breach. (The new vendor charged $600 per gigabyte as compared to the original quote by A-Legal of $1,000 a gigabyte.)

Nassar stated that between January 28 and February 2, she spent ten to fifteen hours "dealing with this situation" and said her hourly rate is $325. Those hours were not billed to the client and did not include time spent by the paralegal. She believed the time constituted lost revenues to Elrod. When asked how much time she expended from February 2 until the day of trial "dealing with this situation," Nassar responded that since January 2009, she had spent approximately 65 hours, which at $325 an hour, was "about $21,000." She said this also was lost revenue to the law firm: "That's time that I could not spend on – on other cases and files."

When asked on cross-examination whether she believed lost revenue is a recoverable damage, Nassar testified that "at a minimum, I incurred time as a result of your client's breaching the contract, call it what you want. It - - those are damages, whether it was just in finding another vendor, having to deal with the situation, those - - those are damages, and I believe they're recoverable." She also believed "those lost revenue damages" were recoverable as a sanction.

David W. Elrod, managing member and owner of the law firm, testified the firm suffered $20,000 in damages as a result of A-Legal's breach. He explained that the $20,000 represented the "time it took in the firm of Nassar, the paralegals, the staff, all of which was not billable. None of that could be billed, and none of it's being charged in this case." Elrod explained "business is our time" and he could not use that time "because we're using it on unproductive matters such as this that's being taken up on this." He reiterated his position on cross-examination, quantifying the loss as "the time of the people who work for the Elrod firm, their inability to work on other business, lost business opportunities, because they were having to deal with the breach by A-Legal of the contract." Elrod said those damages were separate from the attorney's fees the firm was entitled to for handling

the litigation.

At the conclusion of the evidence, the trial court ruled in Elrod's favor and awarded $20,000 in damages, $60,000 in attorney's fees, and pre- and post-judgment interest. One week later, before the trial court signed a judgment, Elrod filed a motion to re-open the evidence under Texas Rule of Civil Procedure 270 to offer additional testimony to clarify "how lost revenue equates to lost profits." The trial court granted the motion over A-Legal's objections.

During a hearing almost three months after the trial ended, Elrod testified that based upon how his law firm works, "lost profits is identical to lost net profits." Elrod said the firm had net profits in 2009 when the breach occurred, as well as in 2007, 2008, and 2010. When asked what he believed were net profits, Elrod explained, "Our firm has no debt. So net profits, to me, is when you pay all your vendors, you pay all your salaries, including mine, at year end, you have a net amount of money left that you call net profits, after you've made all your obligations and you've paid all your indebtedness, is there a net profit available." Further, based on how his law firm operates, lost revenue is lost net profit and "[e]very dollar of that $20,000 . . . was profit, pure net profit to the Elrod law firm."

The trial court ultimately rendered a written judgment awarding Elrod damages and attorney's fees. In findings of fact and conclusions of law, the trial court found that A-Legal failed to comply with the contract first, refused to perform its contractual obligations, and materially breached the contract. The trial court further found the breach caused Elrod damages and concluded Elrod was entitled to recover $20,000 for lost profit damages.

In its second issue, A-Legal argues Elrod failed to present any evidence of lost profits. A-Legal argues that Elrod's evidence showed lost revenue, not lost profit, and "described its lost revenue damages in terms that don't meet the proof requirements of lost profits under established

—4—

law." We agree.

When an appellant attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, as in this case, it must demonstrate that no evidence supports the finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We review the evidence presented at trial in the light most favorable to the fact-finder's findings, crediting evidence favorable to that party if a reasonable fact-finder could and disregarding evidence unless a reasonable fact-finder could not. *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Anything more than a "scintilla of evidence" is legally sufficient to support the finding. *Cont'l Coffee Prods., Co.*, 937 S.W.2d 444, 450 (Tex. 1996). To be more than a scintilla, the evidence must rise "to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994).

Generally, the measure of damages for breach of contract is what restores the injured party to the economic position he would have enjoyed if the contract had been performed. *Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied). This measure may include reasonably certain lost profits. *Id.* Lost profits are damages for the loss of net income to a business and, broadly speaking, reflect income from lost business activity, less expenses that would have been attributable to that activity. *Examination Mgmt. Svcs., Inc. v. Kersh Risk Mgmt., Inc.*, 367 S.W.3d 835, 840 (Tex. App.—Dallas 2012, no pet.). Lost profits may be in the form of direct damages, that is, profits lost on the contract itself, or in the form of consequential damages, such as profits lost on other contracts or relationships resulting from the breach. *Mood*, 245 S.W.3d at 12. Consequential damages may not be recovered unless they are foreseeable and traceable to the wrongful act and result from it. *Id.* Regardless of whether the lost profits are characterized as direct or consequential damages, the amount of the loss must be shown by competent evidence with

reasonable certainty, be based on objective facts, figures, or data, and be predicated on one complete calculation. *Id.* The calculation of lost profits must be based on net profits, not gross revenues. *Examination Mgmt. Svcs.*, 367 S.W.3d at 840.

Initially, we note A-Legal has not challenged whether the damages sought by Elrod were a foreseeable consequence of its breach; consequently, we will assume lost profits would be an appropriate measure of damage under the circumstances presented here. Given that assumption, our review of the record nevertheless shows there is not more than a scintilla of evidence that Elrod suffered reasonably certain business losses resulting from A-Legal's breach.

Elrod testified to nothing more than a general number of $20,000 as damages, generally linked that number to the firm's time spent dealing with the breach, and then said the firm was profitable in 2009, the year of the breach, and in the years before and the year after. The only specific evidence relating to a worker's time came from Nassar, who testified her hourly rate is $325 and she spent ten to fifteen hours over the course of about six days (from the time Elrod pulled the job from A-Legal until the time another vendor was hired) "dealing with the situation." Further, she said since January 2009, she had spent sixty-five hours "dealing with the situation." Nassar was not asked, and she did not provide any evidence of, exactly what she did for fifty hours after a new vendor had been engaged. Regardless, based on the evidence presented, the only calculation that can be made from the evidence produced by Elrod is potential gross revenue brought in by Nassar. But no evidence shows Nassar billed less in the year 2009 because of this breach or that but for the breach she would have billed more. Nor is there any evidence of any particular business that Nassar would have worked on had she not been "dealing with" the A-Legal breach, that the work she would have done would have been billed to any particular client, or that Elrod would have collected the amount billed.

Moreover, Elrod made no attempt to establish what expenses would have been attributable to Nassar's billable hours. Elrod's testimony that the firm netted a profit in 2009 (and in the years before and the year after) does not constitute proof that every hour Nassar might have billed had she not been dealing with A-Legal's breach would have been net profit. Finally, there was no evidence presented that Elrod lost any specific business or any business opportunity because of the breach.

Because the only evidence presented was conclusory and speculative, we conclude there is no evidence of lost profits. We sustain the second issue. Because Elrod's attorney's fee award depends on the success of its breach of contract claim, we also reverse the award of attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008); *see also Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (explaining that only party who prevails on breach of contract and recovers damages can recover attorney's fees). We need not address the remaining issues. *See* TEX. R. APP. P. 47.1.

We reverse the trial court's judgment on Elrod's breach of contract claim and render judgment that Elrod take nothing on its claim.

_____
MOLLY FRANCIS
JUSTICE

110708F.P05

–7–



# Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

A-DELTA OVERNIGHT LEGAL
REPRODUCTION SERVICES
CORPORATION D/B/A A-LEGAL COPY
& RECORD SERVICES, Appellant

No. 05-11-00708-CV      V.

DAVID W. ELROD, PLLC, Appellee

Appeal from the 95th Judicial District Court
of Dallas County, Texas. (Tr.Ct.No. 09-
09815).
Opinion delivered by Justice Francis,
Justices Morris and Murphy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that David W. Elrod, PLLC take nothing on its breach of contract claim. It is **ORDERED** that appellant A-DELTA OVERNIGHT LEGAL REPRODUCTION SERVICES CORPORATION D/B/A A-LEGAL COPY & RECORD SERVICES recover its costs of this appeal from appellee David W. Elrod, PLLC.

Judgment entered October 31, 2012.

_____
MOLLY FRANCIS
JUSTICE