Reversed and Rendered and Opinion filed July 28, 2005









Reversed and Rendered and Opinion filed July 28, 2005.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00619-CV

____________

 

HARRIS COUNTY,
TEXAS,
Appellant

 

V.

 

FRANK L.
VERNAGALLO,
Appellee

 



 

On Appeal from the 334th
District Court

Harris County, Texas

Trial Court Cause No. 98-31875

 



 

O P I N I O N








Harris County appeals the trial court=s judgment
awarding Frank Vernagallo lost wages and attorney=s fees under the
Texas Whistleblower Act.  In three
issues, the County asserts that 1) the evidence is legally and factually
insufficient to support the jury=s finding that
Vernagallo was terminated because he reported alleged illegal conduct; 2) the
evidence is legally and factually insufficient to support the jury=s finding that
Vernagallo made a Agood faith@ report of alleged
illegal conduct on January 15, 1998; and 3) the jury=s findingCthat the County
would not have terminated Vernagallo based solely on information, observation, and
evidence unrelated to his reportCis against the
great weight and preponderance of the evidence. 
We sustain the County=s legal
sufficiency challenge to the evidence supporting causation, reverse, and render
judgment that Vernagallo take nothing.

I.        Factual Background

A.      Summary of Vernagallo=s Employment with
the County.

Vernagallo began working for the County in
1987 as a reserve deputy before becoming a full-time deputy in 1988.  During his service with the County,
Vernagallo received commendations and awards from his supervisors and
co-workers for performing his job well; these are described in more detail
below.  However, Vernagallo=s employment with
the County was punctuated by numerous complaints about his temper and treatment
of fellow officers and citizens, also described more fully below.  As a result, on January 8, 1998, the County
informed Vernagallo that he would be required to participate in the Employee
Assistance Program.  Vernagallo also
reported alleged illegal conduct on numerous occasions while he was employed
with the County.  Constable Freeman
terminated Vernagallo=s employment by letter on the 8th of
April, 1998.  

B.      Vernagallo=s Awards.








Vernagallo received many awards and
commendations during his first few years of employment with the County.  In August of 1988, Vernagallo was commended
for his professional manner and teamwork, which resulted in an arrest for
delivery of a controlled substance.  In
July of 1989, Vernagallo was congratulated for his part in an operation that
resulted in four arrests in a neighborhood that drug dealers were known to
frequent.  One year later, Vernagallo was
again commended for his involvement and professionalism in a felony arrest that
resulted in the seizure of 2.5 kilograms of cocaine.  In 1991, a private association that
contracted for area law enforcement patrols wrote to the department to express
their appreciation for Vernagallo=s loyalty and
dedication to their community. 
Vernagallo=s awards culminated in a 1994 nomination
for the AOne Hundred Club
Award@ for his excellent
handling of a bank robbery situation.[1]

C.      Complaints
About Vernagallo.

Despite these awards and commendations,
Vernagallo=s employment  with the County was not entirely positive.
The complaints about Vernagallo from citizens and fellow officers began in
1990, when a citizen filed a sworn Internal Affairs complaint, alleging that
Vernagallo pulled him over while he was driving, cursed at him, and threatened
to place him in jail.  In 1995, a fellow
officer reported that Vernagallo had yelled and cursed at him; numerous other
officers witnessed the exchange.  

The following year, Vernagallo received
his first reprimand about improper handling of evidence: Deputy Phillips
advised Vernagallo that he was not allowed to store drug evidence in the desk
drawer of court personnel.  That same
year, Vernagallo=s neighbor, Delia Coy, alleged that Vernagallo
had been harassing her family, arresting them for minor offenses, and
threatening to place them in jail for the past two years.  Chief Biehunko counseled Vernagallo about the
first complaint by his neighbors.  In
1996, Daniel McCool, a deputy sheriff, sent a certified letter complaining that
Vernagallo had cursed, threatened, and pushed him at a union meeting. Internal
Affairs reviewed these allegations but did not formally investigate because
McCool did not provide a sworn account.








The number of complaints about Vernagallo=s behavior and
treatment of fellow officers and citizens increased dramatically in 1997; at
lest six incidents occurred that year. 
In January, one citizen alleged that Vernagallo had yelled and cursed at
him at a gun show.  Because the citizen
did not provide a sworn affidavit, there was no further follow-up.  Another citizen filed an informal Internal
Affairs complaint alleging that Vernagallo yelled at, cursed, and threatened
her when she questioned Vernagallo=s arrest of her
son-in-law.  Sergeant McFadden counseled
Vernagallo about this incident.  
Vernagallo=s neighbors filed another complaint, this time
a formal one, about his continued harassment of them.  This complaint was not sustained because the
Coys= allegations could
not be Aestablished
conclusively,@ although Sergeant McFadden noted that he
found the circumstances Asuspicious.@ 

          During the investigation of the second
Coy complaint, Sargeant McFadden discovered that Vernagallo, again, was
handling and storing evidence improperly. 
Vernagallo continued to store evidence in a court clerk=s desk and had
destroyed evidence by flushing it down a toilet.  Vernagallo was disciplined for improper
handling of narcotics evidence and for failing to obey the previous order
relating to his improper storage of evidence.[2]


Two other incidents occurred in November
of 1997.  Jennifer Lemke, a citizen who
operated a towing service, filed an informal complaint alleging that Vernagallo
had cursed at her drivers and threatened to arrest them if they did not leave
the scene of an accident.  Chief Biehunko
counseled Vernagallo about this incident. 
Thomas Johnson, another police officer, filed a sworn, formal complaint
just days later.  Johnson reported that
Vernagallo had pulled him over in his car. 
Then, Vernagallo yelled at him, cursed him, and threatened him before
finally pointing a gun at him.  After a
formal investigation, the complaint was classified as not sustained because
Johnson=s allegations
could neither be proven nor disproven.








Three other incidents merit discussion as
well.  These hostile confrontations
involved Vernagallo and other law enforcement officers.  In the first, Vernagallo yelled at, cursed,
and threatened a fellow law enforcement officer at a political party
convention.  In the second, Vernagallo=s supervisor,
Corporal Clausen, was called to the scene when Vernagallo had a hostile
confrontation with a Houston police officer who had stopped Vernagallo while he
was driving.  In the last incident,
Vernagallo pulled over Houston police officer Frank Stumpo.  Officer Stumpo stated that Vernagallo yelled
at him and cursed him.  He also stated he
thought Vernagallo would kill him.  On
each of these last two incidents, Vernagallo=s supervisor,
Corporal Clausen, counseled Vernagallo at the scene.

D.      Referral to
the Employee Assistance Program at the January 8, 1998 Meeting.

Because of all of these incidents, on
January 8, 1998, the County placed Vernagallo on probation and required him to
participate in an Employee Assistance Program (AEAP@) for anger
management.  Vernagallo=s immediate
supervisor, Corporal Clausen, and Chief Biehunko were at this meeting.  Constable Freeman was not present, although
he authored the letter referring Vernagallo to EAP.  In this letter, Constable Freeman told
Vernagallo that the Anumber of complaints . . . and the nature
of the complaints@ were of great concern to him.  Constable Freeman also warned Vernagallo that
he would be Asubject to disciplinary action@ that could range
from Asuspension to
termination@ if his unacceptable behavior
continued.  When Biehunko informed
Vernagallo that he would have to participate in EAP, Biehunko also asked
Vernagallo if he had written an anonymous letter that was sent to Mothers Against
Drunk Drivers (the Aanonymous letter@), and later
forwarded to the District Attorney=s office.[3]   The letter described the actions of other
officers who did not arrest a man who may have been driving while under the
influence of alcohol.  Vernagallo denied
authorship during the meeting but later claimed he had written the letter.

E.      Report
of Alleged Illegal Conduct at the January 15, 1998 Meeting.








Days after his referral to EAP, Vernagallo
met with the Harris County District Attorney=s office to report
alleged illegal conduct.  This was not
Vernagallo=s first report of alleged illegal conduct,
but it is the report at issue in this appeal. 
Present at the meeting were Vernagallo, Justice of the Peace George
Risner, Assistant District Attorney Chuck Noll and First Assistant to the
District Attorney Don Stricklin.[4]  Vernagallo reported three incidents of
alleged illegal conduct.  First,
Vernagallo reported that a private citizen made $100 cash gifts to some of the
officers, including Vernagallo, in December of 1997.  Vernagallo also reported that some officers
wrongfully had removed property from South Bend, an abandoned subdivision.[5]  Finally, Vernagallo told those present at the
meeting that he had authored the anonymous letter about the alleged drunk
driver.

Assistant District Attorney Chuck Noll
contacted Sergeant McFadden, who is responsible for investigating internal
affairs,  to investigate the allegations
in the anonymous letter about a drunk driver.[6]  Sergeant McFadden conducted an investigation
and reported his conclusion by inter-office memo to Constable Freeman.  In the inter-office memo, Sergeant McFadden
did not identify Vernagallo as the writer of the anonymous letter, nor as the
person who alerted the District Attorney=s office to the
incidents described in the letter. 
Constable Freeman, who later fired Vernagallo, denied knowing then that
it was Vernagallo who made the January 15th report.

F.       Vernagallo=s Termination.








The final complaint about Vernagallo
occurred just three months later.  This
time, a fellow officer and a citizen both filed formal Internal Affairs
complaints about Vernagallo=s behavior.  Deputy Coyle witnessed Vernagallo yelling and
cursing at two citizens Vernagallo had pulled over in their car.  Vernagallo assaulted citizen Compuzano, and
threatened citizen Laredo with jail, suggesting that Child Protective Services
then would take away her child.  Finally,
Vernagallo ordered Compuzano to throw what appeared to be marijuana into the
gutter.[7]


Following the Internal Affairs
investigation, Freeman sent the letter terminating Vernagallo=s employment.  The letter recited that Vernagallo was being
fired for his use of threatening or insulting language toward citizens Laredo
and Compuzano, in violation of the Departmental Policy and Ethics Manual (section
12.21).  In addition, the letter recited
that Vernagallo was being terminated for his improper handling and storage of
the possible drug evidence found during the incident with citizens Laredo and
Compuzano, in violation of the Departmental Policy and Ethics Manual (General
Order # 11).   Finally, the letter
recited that Vernagallo=s behavior at the traffic stop of Laredo
and Compuzano was Atotally unacceptable.@  Constable Freeman wrote:

You yelled at and cursed at a
female in the presence of her four year old child.  You improperly disposed of a suspected
controlled substance in the presence of two citizens as well as your trainee
deputy, Scott Coyle.  As his senior
officer, you are supposed to set an example for the trainee, and instruct him
in proper procedures.  Instead, you acted
inappropriately in his presence and you brought discredit to both yourself and
this Department.

Once again you have allowed a minor disagreement to
escalate into a major confrontation.  You
are unable to interact with the public and fellow employees when there is a
difference of opinion without losing control of your anger. 

This behavior violated section 13.2 of the
Departmental Policy and Ethics Manual, which provides that, ANo employee shall
act or behave privately or in any official capacity in such a manner as to
bring discredit upon himself or the department.@








Constable Freeman testified that he fired
Vernagallo because of the incident involving citizens Laredo and Compuzano that
Deputy Coyle witnessed.  Chief Biehunko
testified that any police officer would have been terminated for mistreating
citizens and destroying drug evidence. Vernagallo contended the real reason he
was fired was for reporting what he believed to be illegal conduct in his
January 15th meeting at the District Attorney=s office.

II.       Procedural
Background

A.      Vernagallo=s Whistleblower
Suit.

Several months
later, Vernagallo filed suit, alleging he was fired in violation of the Texas
Whistleblower Act.[8]  The trial court initially dismissed
Vernagallo=s claim for failing to exhaust the
applicable grievance or appeal procedures before filing suit.[9]  Vernagallo appealed, and this court reversed
and remanded his case for trial.[10]  On remand, the parties tried the case to a
jury.  The jury found in Vernagallo=s favor and
awarded him $3,000.00 in lost wages.  The
County filed a motion for new trial, arguing the evidence did not support the
jury=s causation and
good faith findings and urging the trial judge to disregard the jury=s finding that
Vernagallo would not have been fired for reasons unrelated to his report of
alleged illegal conduct.  The trial judge
denied this motion and, in the second amended final judgment, awarded
Vernagallo his lost wages, attorney=s fees, as well as
pre- and post-judgment interest.[11]  The County then brought this appeal.

B.      The
County=s Issues on Appeal.

On appeal, the County raises three points
of error.  In two issues, the County
argues that the evidence does not support the jury=s affirmative
finding on Question One.  Question One
asked the jury, 








Was [Vernagallo=s] report of
January 15, 1998 to the Harris County District Attorney=s office made in
good faith and a cause of [the] County=s terminating
[Vernagallo] when it did?  

In its first issue, the County asserts that Vernagallo
failed to prove that his January 15th report was a cause of his
termination.  In its second issue, the
County asserts that Vernagallo failed to prove he made the report in good
faith. 

In its third issue, the County asserts the
jury=s ANo@ finding on
Question Two was against the great weight and preponderance of the
evidence.  Question Two asked the jury, 

Do you find that
[the] County would have terminated [Vernagallo] based solely on information,
observation, or evidence that is not related to the fact that [Vernagallo] made
a report of a violation of law? 

The County argues that the jury should have found in
its favor on this question, which is classified as an affirmative defense to a
suit under the Texas Whistleblower Act.[12]

 








III.      No evidence supports the
jury=s finding that the County fired Vernagallo
because of his January 15th report. 

Question One forms the basis of the County=s first two issues
on appeal.  Question One asked the jury
about two facts: 1) Was Vernagallo=s January 15th
report made in good faith; and 2) Was that report a cause of his termination?[13]
In its first issue, the County contends the evidence is insufficient, both
legally and factually, to prove that Vernagallo=s January 15th
report was a cause of Vernagallo=s termination.[14]  In its second issue, the County contends the
evidence does not prove Vernagallo made his report in good faith.  Because, as we discuss below, the evidence is
legally insufficient to prove causation, we do not address the County=s remaining
issues.

A.      Standard
of Review.








The Texas Supreme Court recently
considered the appropriate standard of review for a legal sufficiency challenge
in City of Keller v. Wilson, - - - S.W.3d - - -, No. 02-1012, 2005 WL
1366509 (Tex. June 10, 2005).  As an
appellate court, we consider the evidence in the light most favorable to the
verdict and indulge every reasonable inference that supports it.  See id. at *10.  The evidence is legally sufficient if it
would enable reasonable and fair-minded people to reach the verdict under
review.  See id. at *14.  We credit favorable evidence if reasonable
jurors could, and disregard contrary evidence unless reasonable jurors could
not.  See id.  The trier of fact is the sole judge of the
witnesses= credibility and the weight to be given
their testimony.  See id. at *9; Ulmer
v. Ulmer, 130 S.W.3d 294, 300 (Tex. App.CHouston [14th
Dist.] 2004, no pet.) (en banc). We cannot substitute our judgment for that of
the jury, so long as the evidence falls within the zone of reasonable
disagreement.  See City of Keller,
2005 WL 1366509 at *10.  But, Aif the evidence
allows of only one inference, neither jurors nor the reviewing court may
disregard it.@  Id.  

B.      Proof
by Circumstantial Evidence.

In a whistleblower claim, A[c]ircumstantial
evidence may be sufficient to establish a causal link between the adverse
employment action and the reporting of illegal conduct.@  City of Fort Worth v. Zimlich, 29 S.W.3d 62, 69
(Tex. 2000) (citing Cont=l Coffee Prods.
Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996)).  Circumstantial evidence in this type of case
includes the following:

$                  
knowledge
of the report of illegal conduct;

$                  
expression
of a negative attitude toward the employee=s report of the illegal conduct;

$                  
failure
to adhere to established company policies regarding employment decisions;

$                  
discriminatory
treatment in comparison to similarly situated employees; and

$                  
evidence that the stated reason for the adverse employment
action is false.  

Id. (citing Cont=l Coffee, 937 S.W.2d at
451).  

We address each type of circumstantial
evidence listed by the Zimlich court below to determine whether any
evidence supports a finding that Vernagallo=s January 15th
report was a cause of his termination.

1.       Zimlich
Type One: Knowledge of the Report.








The first type of circumstantial evidence
listed by the Zimlich court is knowledge of the report of illegal
conduct.  Id.  As we explain in greater detail below, to
prove that an employee=s termination was because of his report of
alleged illegal conduct, the employee must show that the person who made the
decision to terminate the employee knew of the employee=s report.  Our inquiry is further narrowed because the
jury was asked specifically about Vernagallo=s January 15th
report to the District Attorney=s office. Thus, we
initially determine whose knowledge is relevant, before turning to whether that
person knew of Vernagallo=s January 15th report.

a.       Constable
Freeman must have known of Vernagallo=s January 15th
report.

For a complainant to show causation in a
suit alleging wrongful termination under the Whistleblower statute, the
complainant must show that the person who took the adverse employment action
knew of the employee=s report of illegal conduct.  See id. at 70 (sustaining a legal
sufficiency challenge when there was Ano evidence in the
record . . . that the decision-maker . . . knew about [the employee=s] report of . . .
illegal conduct@) (citing Cont=l Coffee, 937 S.W.2d at
451B52); see also
Beattie v. Madison County Sch. Dist., 254 F.3d 595, 603B04 (5th Cir. 2001)
(noting that the school board was the final decision-maker and Aif there is no
evidence that the board knew of the protected activity,@ the employee
could not show that the activity was the reason she was fired); City of
Forth Worth v. Johnson, 105 S.W.3d 154, 164 (Tex. App.CWaco 2003, no
pet.) (AIn particular, the
employee must show that the person who ultimately made the decision to fire the
employee knew of the reported violation of law made by the employee.@).  This is because the decision-maker could not
fire an employee because of the employee=s report of
alleged illegal conduct if the decision-maker did not even know the employee
made such a report.  See Zimlich,
29 S.W.3d at 70; Beattie, 254 F.3d at 603B04; Johnson,
105 S.W.3d at 164.








In this case, Constable Freeman signed the
letter from the County terminating Vernagallo. 
Constable Freeman testified that an elected constable, such as himself,
has the authority to hire and fire without consulting any other person or
board.  Vernagallo has not contested that
Constable Freeman was the final decision-maker.[15]  Thus, we look to the record for any evidence
to support a finding that Constable Freeman knew of Vernangallo=s January 15th
report.  See id.

b.       No
evidence shows that Constable Freeman knew of Vernagallo=s January 15th
report.

We find no direct evidence that Constable
Freeman knew of Vernagallo=s January 15th
report.  Vernagallo seems to agree with
this conclusion because he relies on circumstantial evidence to prove Constable
Freeman had knowledge.[16]  However, the events that Vernagallo relies on
occurred on January 8thCbefore the report at issue here.  Because these events took place before
Vernagallo=s January 15th meeting, they do not
constitute evidence that Freeman knew of Vernagallo=s subsequent
January 15th report to the District Attorney, as the jury found.








Vernagallo argues that Constable Freeman
knew of his January 15th report because Chuck Noll, an assistant District
Attorney, asked Sergeant McFadden to investigate the alleged drunk-driving
incident.[17]  But, as we discuss below, no evidence in the
record exists that any of the people present at the meeting told Constable
Freeman that Vernagallo was the person who wrote the letter and reported the
other two instances of alleged illegal conduct at the January 15th meeting.

The following people were present at the January 15th meeting and
testified at trial.  Justice of the Peace
George Risner testified that he did not inform Constable Freeman (nor any of
Vernagallo=s other supervisors) about Vernagallo=s complaints.  Assistant District Attorney Chuck Noll also
testified that he did not remember talking to anyone at the precinct about
Vernagallo=s report on January 15th.  Don Stricklin was also present at the
meeting.  Portions of his deposition testimony
were admitted into evidence, but they do not indicate that he ever informed
Constable Freeman that Vernagallo was the person who made the report.  Vernagallo also testified that he never told
Constable Freeman (or Chief Biehunko or Sergeant McFadden) that he had gone to
the District Attorney=s office that day.  The evidence also
does not support a finding that Constable Freeman discovered some other way
that Vernagallo reported these incidents.








To conclude, as the jury did, that
Constable Freeman knew Vernagallo submitted the January 15th report requires
speculation because the record does not divulge if he knew about it.  See id. (ABut absent
evidence supporting an inference that discrimination was a factor . . . a
finding of liability rests only on speculation.@); see also
City of Keller, 2005 WL 1366509, at *4 (AIn claims or
defenses supported only by meager circumstantial evidence, the evidence does
not rise above a scintilla (and thus is legally insufficient) if jurors would
have to guess whether a vital fact exists.@).  Constable Freeman may have suspected
Vernagallo was the person who reported these incidents to the District Attorney=s office.  Or, Constable Freeman may not have known, as
he testified.  The circumstances
Vernagallo relies uponCthat Assistant District Attorney Chuck
Noll contacted Sergeant McFadden to investigate the incident reported in the
anonymous letter and the cash giftsCare Aequally consistent
with either of [the] two facts.@  See Cont=l Coffee, 937 S.W.2d at
450 (citing Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d 319, 324
(Tex. 1984)).  In such a case, Ano more than a
scintilla of evidence supports a finding and a >no evidence= point must be
sustained.@  Id.
(citing Gammage, 668 S.W.3d at 324).

Vernagallo also urges this court to uphold
the jury=s finding to
Question One if the County had knowledge of any of Vernagallo=s reports.  However, we cannot expand our scope of review
to consider issues not presented to the jury, and the jury was not asked about
any of Vernagallo=s other reports.  See Bradford v. Vento, 48 S.W.3d 749,
754 (Tex. 2001).

2.       Zimlich
Type Two: Expression of a Negative Attitude.

The second type of circumstantial evidence
listed by the Zimlich court is the expression of a negative
attitude toward the report of alleged illegal conduct.  See Zimlich, 29 S.W.3d at 69.  Vernagallo claims he presented evidence of a
negative attitude toward his report of alleged illegal conduct.  However, despite Vernagallo=s assertion that
the record contains each of the types of circumstantial evidence listed by the Zimlich
court and discussed supra, Vernagallo does not identify any record
evidence, nor have we found any, to support a finding that Freeman expressed a
negative attitude toward Vernagallo=s January 15th
report.  See id. 

The only evidence of a Anegative attitude@ toward reporting
that Vernagallo cites in his brief deals with the cash gifts given to police
officers.  When Vernagallo asked about
the gifts at work, his supervisor, Corporal Clausen, told Vernagallo that Aeveryone=s been getting the
money,@ and later stated
that, Aif you locked up
all the corrupt MFs in this department, [then the dispatcher] would be talking
to herself on the radio.@








This testimony does not support the jury=s finding for
three reasons.  First, Constable FreemanCthe decision-makerCis not the person
who expressed a negative attitude. 
Second, while we could fairly regard these statements as the expression
of a negative attitude toward reporting in general, these statements were made
on January 8th,  before Vernagallo=s January 15th
report.  As such, they could not have
been an expression of a negative attitude toward the January 15th report that
is the basis of this appeal.  Third, even
if we attributed the statements to the later January 15th report and to
Constable Freeman, the expression of a negative attitude toward a report,
standing alone, cannot support the jury=s finding.  See 
id. (ABut evidence that an adverse employment
action was preceded by a superior=s negative
attitude toward an employee=s report of
illegal conduct is not enough, standing alone, to show a causal connection
between the two events.  There must be
more.@).  

3.       Zimlich
Types Three and Four: Failure to Adhere To Established Policies and
Discriminatory Treatment.

The third type of circumstantial evidence
listed by the Zimlich court is the failure to adhere to established
policies regarding employment decisions; the fourth is discriminatory treatment
in comparison to similarly-situated employees. 
See id.  In his brief,
Vernagallo asserts that the County failed to adhere to established policies
regarding employment decisions and treated Vernagallo differently than
similarly-situated employees.  Vernagallo
cites the County=s use of unverified and unsustained
complaints against him to establish the required causal link between his
January 15th report and his termination.[18]   However, Vernagallo does not point to any
evidence in the record to support these assertions.  The complaints were not sustained because the
complaints Awere not proven, however the complaints
were also not disproved.@[19]  Constable Freeman=s letter to
Vernagallo stated that Vernagallo=s violations of
the Departmental Policy and Ethics Manual were the reason for his
termination.  Vernagallo has not
identified, nor have we located record evidence of, a similarly-situated
employee who was treated differently. 
The same is true of Vernagallo=s assertion that
the County=s actions violated its own established
procedures.  








4.       Zimlich
Type Five: Evidence the Stated Reason for Termination Was False.

The final type of circumstantial evidence
listed by the Zimlich court is evidence the stated reason for
termination was false.  See id.  As with the previous categories, Vernagallo
asserts in his briefing that the stated reason for his termination was
false.  Again, however, Vernagallo does
not cite any evidence in the record, and we have found none, to support this
claim.  And, as evidenced by the
multitude of similar complaints about Vernangallo=s behavior
mentioned previously, Constable Freeman=s stated reason
for firing Vernagallo is not implausible.[20]  See City of Keller, 2005 WL 1366509,
at *8 (AIn discrimination
cases, discharged employees will never have to prove that the reason given for
termination was a pretext if no-evidence review must disregard [the stated]
reason.@).  Without any evidence, the jury could only
speculate that the stated reason for Vernagallo=s termination was
false.  See Zimlich, 29 S.W.3d at
70 (A[A]bsent evidence
supporting an inference . . . a finding of liability rests only on speculation.@); City of
Keller, 2005 WL 1366509, at *4 (stating evidence is legally insufficient if
the evidence does not rise above a scintilla and jurors could only guess
whether a vital fact exists). 

Thus, the record does not contain any of
the types of circumstantial evidence listed by the Zimlich court to
show that the County fired Vernagallo because of his January 15th report.  Nor does the record contain any direct
evidence to prove that fact.  We conclude
the evidence is legally insufficient to support the jury=s answer to
Question One, which asked whether Vernagallo=s January 15th
report was made in good faith and a cause of his termination, and sustain the
County=s first point of
error.








Because we have sustained the County=s legal
sufficiency challenge to the evidence supporting causation, we do not address
its factual sufficiency challenge to causation. 
See El Paso Prod. Co. v. Valence Operating Co., 112 S.W.3d 616,
625 (Tex. App.CHouston [1st Dist.] 2003, pet. denied)
(sustaining legal sufficiency challenge and not addressing factual sufficiency
challenge); In re C.O., 65 S.W.3d 175, 183 (Tex. App.CTyler 2001, no
pet.) (same); Houston Mercantile Exch. Corp. v. Dailey Petroleum Corp.,
930 S.W.2d 242, 248 (Tex. App.CHouston [14th
Dist.] 1996, no writ) (same).  For
similar reasons, we also need not address Question Two, which presented the
County=s affirmative
defense and was predicated on an affirmative answer to Question One (Vernagallo=s whistleblower
cause of action).  The affirmative
defense question was relevant and needed to be submitted to the jury only if
Venagallo first proved his claim. 
Because we already have held that Vernagallo did not prove his claim,
the question is moot.

IV.      Conclusion

We have
reviewed the record and found no evidence to support the jury=s finding that the County
terminated Vernagallo=s employment because of his January
15th report to the District Attorney=s office.  Thus, we
reverse the trial court=s judgment, and we render judgment
that Vernagallo take nothing on his claims.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment
rendered and Opinion filed July 28, 2005.

Panel
consists of Chief Justice Hedges and Justices Fowler and Frost.











[1]  Although
Vernagallo was nominated for the award in 1994, he did not receive the award
until the 1996 awards banquet.





[2]  In Sergeant
McFadden=s opinion, Vernagallo Aintentionally
turned over more controlled substances [to court personnel rather than the
property room custodian]. . . after being told not to continue this practice .
. . .@





[3]  An attached
fax cover page indicated that Harris County Judge Robert Eckels forwarded the
anonymous letter to Constable Freeman .





[4]  The parties
sometimes refer to Mr. Stricklin, now the Honorable Don Stricklin of the 337th
District Court of Harris County, as ADon
Strickland.@  For
simplicity, we refer to him as Don Stricklin. 





[5]  The District
Attorney=s office previously investigated this incident, but no
charges were filed.





[6]  Sergeant
McFadden was also contacted by the District Attorney=s office to investigate the allegations of $100 cash
gifts to the officers.





[7]  At trial,
Vernagallo denied that the substance was marijuana.





[8]  Vernagallo
originally pleaded a violation of the Texas Labor Code and later amended his
pleading to allege a claim under the Texas Whistleblower Act.  See Tex.
Gov=t Code ' 554.001B.010.





[9]  See Tex. Gov=t Code ' 554.006 (requiring employee to initiate action under
the grievance or appeal procedures of the employer before suing under this
chapter).





[10]  Vernagallo
v. Freeman, No. 14-99-00584-CV, 2000 WL 1357206 (Tex. App.CHouston [14th Dist.] Sept. 21, 2000, no pet.) (not
designated for publication).





[11]  See Tex. Gov=t Code ' 554.003 (specifying the relief available in a
successful claim).





[12]  Tex. Gov=t Code ' 554.004(b) (AIt is an
affirmative defense . . . that the employing state or local governmental entity
would have taken the action against the employee . . . based solely on
information, observation, or evidence that is not related to the fact that the
employee made a report protected under this chapter of a violation of law.@).  We note
that, despite its characterization in the Government Code as an affirmative
defense, proof under this section actually negates the causation element of a
whistleblower plaintiff=s cause of action. 
See Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 212 (Tex.
1996) (AAn affirmative defense does not seek to defend merely
by denying the plaintiff=s claims, but rather seeks to establish >an independent reason why the plaintiff should not
recover.=@); Walzier v. Newton, 27 S.W.3d 561, 563B64 (Tex. App.CAmarillo
2000, no pet.) (stating that affirmative defenses are interposed to defeat a
prima facie case established by the plaintiff, and sole proximate cause was not
an affirmative defense because it purported to negate an element of the
plaintiff=s cause of action); Buls v. Fuselier, 55 S.W.3d
204, 211 (Tex. App.CTexarkana 2001, no pet.) (A[A]n affirmative defense relieves the defendant of
liability even if all the elements of the plaintiff=s cause of action are established.@) (citing Moulton v. Alamo Ambulance Serv., Inc.,
414 S.W.2d 444, 448 (Tex. 1967)); Metrocon Constr. Co., Inc. v. Gregory
Constr. Co., Inc., 663 S.W.2d 460, 464 (Tex. App.CDallas 1983, writ ref=d
n.r.e.) (on reh=g) (ABy an affirmative defense a defendant, rather than
denying the existence of the plaintiff=s
allegations, attempts to avoid the plaintiff=s
allegations by proving a new, independent fact.@).  Under the Whistleblower statute, proof that the
governmental employer would have made the same decision solely because
of a reason unrelated to the employee=s protected report negates an essential element of the
whistleblower plaintiff=s case, namely, that the report was
a cause of the adverse employment action. 
If the plaintiff was fired solely for a reason unrelated to his report
of illegal activity, then his report could not have been a cause of his
termination.  And, like two sides of the
same coin, if the report was a cause of his termination, the plaintiff could
not have been fired solely because of an unrelated reason. 





[13]  See Texas
Dep=t of Human Servs. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995) (A[T]he standard of causation in whistleblower and
similar cases should be that the employee=s
protected conduct must be such that, without it, the employer=s prohibited conduct would not have occurred when it
did.@).





[14]  We address the County=s legal sufficiency challenge
first.  See Glover v. Tex. Gen. Indem.
Co., 619 S.W.2d 400, 401 (Tex. 1981) (per curiam); Mohnke v. Greenwood,
915 S.W.2d 585, 589 (Tex. App.CHouston [14th Dist.] 1996, no writ) (en banc); see also
City of Houston v. Cotton, - - - S.W.3d - - -, No. 14-03-00637-CV, 2005 WL
646096, *4 (Tex. App.CHouston [14th Dist.] Mar. 22, 2005,
no pet. h.) (AWhen . . . both legal and factual
sufficiency challenges are raised on appeal, the appellate court must first
examine the legal sufficiency of the evidence.@) (citing Trimble v. Tex. Dep=t of Protective & Regulatory
Servs., 981 S.W.2d
211, 217 (Tex. App.CHouston [14th Dist.] 1998, no
pet.)).





[15]  Vernagallo
does, however, urge this court to consider the knowledge of other
supervisors.  In his brief, Vernagallo
asserts: AEmployment decisions by the County were not made by
Freeman alone working in a vacuum.  As
the Constable, Freeman oversaw the Precinct 2 office, and relied on his
first-line supervisors to carry out much of the duties.@  

No record citation follows, nor have we
been able to locate any evidence in the record to support this assertion.  Although not specifically stated by
Vernagallo, we interpret his argument as one that asks this court to uphold the
County=s liability under a Aconduit@ theory.  

We decline to do so, in part, because the
Texas Supreme Court has not adopted the Aconduit@ theory, which permits liability when Aone supervisor makes a recommendation regarding an
employee to another innocent supervisor who acts on that recommendation without
conducting any independent judgment.@  See Zimlich, 29 S.W.3d at 70B71 (also stating the court Aneed not consider . . . whether liability can be based
on a >conduit= theory@ because there was no evidence that another employee
was the conduit for bad motives). 

            Additionally, as in Zimlich,
even assuming the viability of the theory, there is no evidence that Constable Freeman
decided to fire Vernagallo based upon the recommendation of another supervisor
without exercising any independent judgment. 
See id. at 71.  Therefore,
we consider only Constable Freeman=s
purported knowledge.





[16]  Vernagallo
relies upon the following events that occurred at his January 8th meeting in
Chief Biehunko=s office to establish knowledge.  At this meeting, Vernagallo was shown the
anonymous letter and asked if he had written it.  Vernagallo denied writing the letter.  According to Vernagallo=s testimony, he was then handed the letter referring
him to the EAP program along with a fax cover sheet from Judge Eckels addressed
to Constable Freeman.  Vernagallo later
admitted to Biehunko that he had written the letter and, according to
Vernagallo=s testimony, Biehunko then responded, AI know.@  Chief Biehunko denied that this exchange
occurred.





[17]  The specifics
of this incident were detailed in the anonymous letter that Vernagallo claimed
he had authored during his January 15th meeting at the District Attorney=s office. 
Sergeant McFadden was also asked to investigate the $100 cash gifts to
police officers that Vernagallo reported.





[18]  On appeal,
Vernagallo also urges this court to uphold the jury=s finding based upon his referral to EAP and his
reassignment to building security and desk duties, which he asserts were other
adverse employment actions.  The jury was
not asked, however, whether these decisions were caused by Vernagallo=s report. 
Therefore, we do not consider them. 
See Bradford, 48 S.W.3d at 754 (ABecause
[appellants] did not object to the jury charge, we review the sufficiency of
the evidence in light of the charge submitted.@).





[19]  Sergeant
McFadden, who was in charge of internal affairs, testified that when a
complaint was Anot sustained,@ it
meant the department could not determine Awhether
[the complained-of activity was] lawful or unlawful or a violation of policy or
not.@





[20]  Constable Freeman testified that he
fired Vernagallo because of the incident involving citizens Laredo and
Compuzano that Deputy Coyle witnessed. 
Chief Biehunko testified that any police officer would have been
terminated for mistreating citizens and destroying drug evidence.