

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00095-CV

KHOSROW SADEGHIAN                                                        APPELLANT

V.

WILLIE HUDSPETH                                                          APPELLEE

----------

FROM COUNTY COURT AT LAW NO. 2 OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In seven points, Appellant Khosrow Sadeghian appeals from the trial court's judgment awarding Appellee Willie Hudspeth $16,000 on his counterclaims against Sadeghian and $70,210.53 in sanctions, including $20,210.53 in attorney's fees. Sadeghian challenges the trial court's jurisdiction over Hudspeth's counterclaims and the evidence in support of the judgment. Because we hold that part of the trial court's judgment exceeds its jurisdictional limit, we modify the judgment in part to

---

[1]See Tex. R. App. P. 47.4.

exclude the damages awarded for conversion. But because we also hold that the trial court had jurisdiction over Hudspeth's claims and that the evidence supports the judgment, we affirm the judgment as modified.

**Background**

This suit arose out of a dispute over whether Hudspeth and Sadeghian had a written contractual agreement under which Hudspeth would perform repairs on Sadeghian's property. Sadeghian sued Hudspeth asserting breach of contract, and Hudspeth defended the suit on the ground that Sadeghian's suit was groundless and nothing more than an attempt to fraudulently force a settlement out of Hudspeth.

Sadeghian filed his breach of contract suit against Hudspeth in the justice court. Hudspeth filed a counterclaim for common law fraud asserting that Sadeghian had made false and material misrepresentations of fact to Hudspeth and the trial court. Hudspeth also sought sanctions under rule 13 of the rules of civil procedure and chapters 9 and 10 of the civil practice and remedies code,[2] arguing that Sadeghian's suit was frivolous, baseless, and groundless and brought in bad faith as a means to harass Hudspeth. The jury found for Hudspeth and found that his attorney's fees and costs were $4,316, and the trial court rendered judgment for Hudspeth in that amount.

---

[2]Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. §§ 9.001–.014, 10.001–.006 (West 2002).

2

Sadeghian then appealed to the county court. Hudspeth amended his petition, adding a claim for conversion of personal property. Hudspeth once again sought sanctions, including attorney's fees, under rule 13 and chapters 9 and 10. Hudspeth also asserted that in defending against Sadeghian's suit, he had been forced to spend time away from work, causing him to lose work worth $6,400.

At trial, Sadeghian and Hudspeth told very different versions of the events leading up to the litigation. Hudspeth testified that had been doing work on different property owned by a third party and had left materials on the property for that purpose, but the property was sold at a foreclosure sale to Sadeghian. After Sadeghian's purchase of the property, an employee of Sadeghian refused to let Hudspeth retrieve the materials. Sadeghian testified Hudspeth's testimony was "not believable at all," that Hudspeth was lying, and that he did not see any materials at the property.

The parties agreed that Sadeghian had asked Hudspeth about doing some repair work on one of the properties he owned and that Hudspeth gave Sadeghian a bid for the work. Hudspeth testified that the bid was for $25,000. Sadeghian testified that Hudspeth's bid was for $17,000, and when asked if the bid had been for $25,000, he asserted that Hudspeth's testimony was a lie. But he later changed his testimony to say that Hudspeth's original bid was $25,000 and that he had lowered it to $17,000. Both parties agreed that Sadeghian rejected Hudspeth's bid as too high.

The parties disagreed about what happened next. Hudspeth testified that Sadeghian asked him to do the work for $8,900, that he declined, and that Sadeghian asked him if he knew anyone who would do the work for that amount. Hudspeth gave him the contact information for Eddie Vasquez, who had done some work for Hudspeth in the past.

Sadeghian testified that he only hired Vasquez on the condition that Hudspeth would be supervising his work, that he gave Hudspeth a handwritten contract obligating Hudspeth to manage Vasquez's work for a payment of $200, and that Hudspeth accepted that offer over the telephone. Hudspeth testified that he unequivocally turned down Sadeghian's handwritten offer but agreed to take money from Sadeghian to give to Vasquez and that he did so. Hudspeth also offered into evidence a written, signed contract that Sadeghian entered into with Vasquez to perform work on the property. Sadeghian acknowledged that this contract made no mention of Hudspeth or of Hudspeth supervising Vasquez's work. But Sadeghian maintained that notwithstanding the terms of his agreement with Vasquez, Hudspeth had agreed to manage the project under the terms of the handwritten offer.

Hudspeth testified that Vasquez and Sadeghian began having disagreements almost as soon as Vasquez began working on the property and that within three or four days, Sadeghian kicked Vasquez off the job. Sadeghian testified that Hudspeth claimed to have paid Vasquez to purchase materials but that no work was done on the property and that he never saw any of the items Vasquez supposedly purchased.

4

Hudspeth testified that Sadeghian demanded that Hudspeth pay him the $8,900 that Vasquez had agreed to do the work for (but most of which Sadeghian acknowledged he had not paid to Vasquez or anyone else) plus the money that Hudspeth had taken from Sadeghian and given to Vasquez for materials. Hudspeth stated that when he refused, Sadeghian physically threatened him and then filed this lawsuit. Sadeghian denied ever threatening Hudspeth and testified that he originally asked Hudspeth to return only the money he had given him to give to Vasquez but that after the property was demolished because it had not been repaired, he increased his demand.

The jury believed Hudspeth's version of events and found that Sadeghian and Hudspeth did not have a written agreement, that Sadeghian committed fraud against Hudspeth, and that Sadeghian converted Hudspeth's personal property. The jury found that Hudspeth's damages were $10,000 for fraud and $6,000 for conversion. The jury further found that Sadeghian's suit was "frivolous, baseless, or groundless" and had been brought in bad faith or for purposes of harassment and determined that $50,000 would compensate Hudspeth for Sadeghian's filing of the suit. The jury also found that $20,210.53 was a reasonable fee for Hudspeth's attorney in defending against Sadeghian's frivolous, baseless, or groundless lawsuit, that $10,000 was a reasonable fee if Sadeghian appealed to the court of appeals, and that another $10,000 was a reasonable fee if Sadeghian appealed to the Supreme Court of Texas. The trial court's judgment conformed to the jury's findings, awarding Hudspeth $10,000 for fraud, $6,000 for conversion, $50,000 for Sadeghian's

5

"frivolous, baseless, or groundless litigation," $20,210.53 in attorney's fees, plus $10,000 contingent appellate attorney's fees if Sadeghian appealed, and an additional $10,000 if Sadeghian filed a petition for review with the Supreme Court. Sadeghian now appeals.

**Analysis**

*Jurisdiction*

In his first point, Sadeghian argues that the sum of Hudspeth's counterclaims exceeded the jurisdictional limits of the county court and that the county court therefore did not have jurisdiction over the counterclaims. He argues that this court should therefore reverse the county court's judgment and dismiss Hudspeth's claims with prejudice.

In an appeal from a justice court to a county court, the jurisdiction of the county court is confined to the jurisdictional limits of the justice court.[3] A justice court has jurisdiction of civil matters in which the amount in controversy—that is, the value of the case at the time of filing—is not more than $10,000, exclusive only of interest.[4] When jurisdiction is properly acquired, no subsequent event in the case will defeat that jurisdiction.[5] Accordingly, when the original suit is within the

---

[3]*Crumpton v. Stevens*, 936 S.W.2d 473, 476 (Tex. App.—Fort Worth 1996, no writ).

[4]Tex. Gov't Code Ann. § 27.031 (West Supp. 2012); *United Servs. Auto. Ass'n v. Brite*, 215 S.W.3d 400, 401 (Tex. 2007) (referring to the "amount in controversy" as the value of the case at filing).

[5]*Flynt v. Garcia*, 587 S.W.2d 109, 109–10 (Tex. 1979).

6

jurisdictional limits of the court and subsequent amendments seek only additional damages that accrued because of the passage of time, the court does not lose jurisdiction even if the amendment increases the amount in controversy above the jurisdictional limits of the court.[6] If the party's "original and amended petitions do not affirmatively demonstrate an absence of jurisdiction, a liberal construction of the pleadings in favor of jurisdiction is appropriate."[7]

Sadeghian argues that Hudspeth sought $10,000 for fraud, $6,000 for conversion, $50,000 as sanctions for filing a frivolous suit, and $19,230 in attorney's fees, also as sanctions. We first note that in his discussion of this point, Sadeghian fails to cite any part of the record where we may find support for his assertions.[8] Because this point concerns jurisdiction, however, we searched the record to find Hudspeth's pleadings.[9] From our review we have determined that although the jury

---

[6]*Id.*; *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 449 (Tex. 1996).

[7]*Cont'l Coffee Prods.*, 937 S.W.2d at 449.

[8]*See* Tex. R. App. P. 38.1(i) (requiring argument to be supported by appropriate citations to the record); *see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (stating that appellate court has discretion to waive point due to inadequate briefing); *Devine v. Dallas* County, 130 S.W.3d 512, 513–14 (Tex. App.—Dallas 2004, no pet.) (holding that when a party fails to adequately brief a complaint, he waives the issue on appeal).

[9]*See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993) (considering whether the trial court had jurisdiction over the case and stating that subject matter jurisdiction cannot be waived); *Lawrence v. City of Wichita Falls*, 122 S.W.3d 322, 326 (Tex. App.—Fort Worth 2003, pet. denied) ("Subject matter jurisdiction cannot be waived and may be raised by the court on its own motion or for the first time on appeal.")

awarded those amounts, Hudspeth's counterpetition did not allege damages in those amounts.

In Hudspeth's original counterpetition, he asserted a claim for common law fraud, and he asked for attorney's fees "in the amount of not less than $5,000.00" as a sanction for Sadeghian's filing what Hudspeth alleged was a "frivolous, baseless, and groundless lawsuit in bad faith." He prayed for actual damages, court costs, prejudgment and postjudgment interest, exemplary damages, sanctions, and attorney's fees. But other than the $5,000 in sanctions, Hudspeth did not assert any specific amount of damages or relief sought.

The Supreme Court of Texas has held that "the omission of any allegation regarding the amount in controversy from plaintiff's petition [does] not deprive the court of jurisdiction, but [is] instead a defect in pleading subject to special exception and amendment."[10] The *Peek* court held that although the original petition in that case was defective for failing to allege the amount in controversy, the petition was nevertheless sufficient to invoke the jurisdiction of the trial court.[11]

This case differs from *Peek* in that Hudspeth did include one allegation regarding the amount in controversy: $5,000 in sanctions. This amount was within the court's jurisdiction. But he made no allegations in his original counterpetition regarding the amount in controversy relating to his other claims. Because this

---

[10]*Peek v. Equip. Serv. Co. of San Antonio*, 779 S.W.2d 802, 805 (Tex. 1989).

[11]*Id.*

counterpetition did not affirmatively negate the absence of jurisdiction, the justice court correctly construed the pleadings in favor of jurisdiction.[12]  And because the justice court properly acquired jurisdiction over Hudspeth's counterclaim, Hudspeth's subsequent amendment of his pleadings did not divest the court of jurisdiction.[13]

Hudspeth amended his pleadings in the county court, but these pleadings did not demonstrate that the county court lacked jurisdiction over the new claims.  In his second amended counterpetition, Hudspeth added a claim for conversion, for which he alleged damages of $6,000, and did not assert any specific amount of damages on his fraud claim.  Hudspeth also sought as a sanction his attorney's fees that had accrued during the course of litigation, as well as sanctions for Sadeghian's pursuit of a groundless lawsuit—amounts that were premised on the passage of time due to the ongoing litigation and were therefore within the trial court's jurisdiction.[14]  Thus, although the jury found and the judgment awarded damages of more than $10,000, contrary to Sadeghian's argument, Hudspeth did not *plead* damages over the court's jurisdictional limit.  Accordingly, we hold that Hudspeth's pleadings did not negate the existence of jurisdiction.

---

[12]*See Cont'l Coffee Prods.*, 937 S.W.2d at 449.

[13]*See Flynt*, 587 S.W.2d at 109–10.

[14]*See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 449; s*ee also Crumpton*, 936 S.W.2d at 477 (holding that the county court erred by denying Crumpton's attorney's fees on the ground that the fees were in excess of justice court's jurisdictional limits because the fees were incurred in prosecuting the suit in the county court).

Although the trial court rendered a judgment in excess of its jurisdictional limits, Sadeghian makes no argument about the court's lack of authority to do so. His only argument relates to the trial court's jurisdiction to hear the claims in the first place. He makes no arguments supported by authority that even if the trial court had jurisdiction to hear the claims, it had no authority to render a judgment in excess of its jurisdiction limits. Nevertheless, because an amount of a judgment in excess of the trial court's jurisdictional limits is void, we consider whether the trial court's judgment exceeded its jurisdictional limits.[15]

As stated above, in his second amended counterclaim, Hudspeth sought two additional categories of damages, both of which he alleged were incurred while the litigation was proceeding. First, he pled for $6,400 for loss of employment opportunities caused by the ongoing litigation. Second, he asked to be awarded as sanctions the attorney's fees that he incurred and that had continued to accrue in defending against Sadeghian's groundless lawsuit. The attorney's fees accrued during the litigation and the employment opportunities lost because Hudspeth was required to spend time away from work in order to "handle Sadeghian's . . . baseless litigation" were damages that accrued because of the passage of time during the litigation period. Therefore, even if they caused the amount in controversy to

---

[15]*Kendziorski v. Saunders*, 191 S.W.3d 395, 410 (Tex. App.—Austin 2006, no pet.).

10

surpass the jurisdictional limits of the court, the trial court had jurisdiction to hear the claims and to render judgment on those claims in excess of its jurisdictional limits.[16]

Hudspeth also asserted a claim for conversion, based on his allegation that he had left materials at a property that Sadeghian purchased in foreclosure and that Sadeghian had refused to let him retrieve the materials. The trial court awarded Hudspeth damages for $6,000 on this claim in accordance with the jury's verdict. The trial court's award of fraud damages of $10,000 was the maximum amount of damages that could be awarded within the trial court's jurisdiction (exclusive of interest and amounts due to the passage of time), and consequently this amount of conversion damages was rendered in excess of the trial court's jurisdictional limit.[17] Because this part of the award was not due to the passage of time, we hold that this part of the judgment in excess of the trial court's jurisdictional limit is void. Accordingly, we sustain Sadeghian's first point as to this claim, and we modify the trial court's judgment in part to exclude the award of $6,000 on Hudspeth's conversion claim.[18] We overrule the remainder of Sadeghian's first point.

---

[16] See Cont'l Coffee Prods. Co., 937 S.W.2d at 449; Crumpton, 936 S.W.2d at 477.

[17] See Kendziorski, 191 S.W.3d at 410 (holding that the portion of the judgment in excess of the trial court's jurisdictional limit was void); N. Am. Ins. Co. v. Jenkins, 184 S.W. 307, 308 (Tex. Civ. App.—Galveston 1916, no writ) (reforming the trial court's judgment to omit the amount exceeding the trial court's jurisdiction).

[18] See Oldner v. Medlock, No. 05-10-00848-CV, 2012 WL 114192, at *1 (Tex. App.—Dallas Jan. 12, 2012, no pet.) (mem. op.) (holding that the fact that county court's judgment included compensatory and exemplary damages exceeding its jurisdictional limits "does not render its entire judgment void or deprive the county

11

*Conversion*

In part of his second point, Sadeghian argues that the trial court should not have submitted Hudspeth's counterclaim for conversion to the jury. Because we modify the judgment to delete all damages for conversion, we overrule this portion of his second point as moot. Similarly, in Sadeghian's fifth point, he argues that the evidence does not support the jury's answers to the questions regarding Hudspeth's conversion claim. We likewise overrule this point as moot.

*Breach of Contract*

In his third point, Sadeghian asserts that the evidence at trial proved the existence of a contract, and therefore the jury's answers to the questions on his breach of contract claim are erroneous. Under this point, Sadeghian first states that a contract is established when an offer is accepted, accompanied by consideration. He then argues that Hudspeth established "that he performed pursuant to the handwritten contract" when he testified that he cashed Sadeghian's check in order to give the money to Vasquez and that he gave the money to Vasquez as he completed repairs or incurred expenses. But this testimony does not indicate that Hudspeth accepted the offer alleged by Sadeghian. Reviewing the testimony relied

court of jurisdiction over the case" and that "only that portion of the county court's judgment exceeding the jurisdictional limit of $10,000 exclusive of interest is void"); *Kendziorski*, 191 S.W.3d at 410; *Jenkins*, 184 S.W. at 308; *cf. H & S Supply Co., Inc. v. Oscar Renda Contracting, Inc.*, No. 02-02-00093-CV, 2003 WL 1897584, at *3 (Tex. App.—Fort Worth Apr. 17, 2003, no pet.) (mem. op.) (rendering judgment dismissing the appellee's counterclaim for lack of jurisdiction because the evidence at trial showed that the amount in controversy on the appellee's only counterclaim exceeded the jurisdictional limits of the court).

12

upon by Sadeghian, the record actually shows that Hudspeth testified that he expressly refused to agree to the terms of the handwritten contract and that he agreed to take the check and pass the money on to Vasquez solely as a favor to Sadeghian.[19]

Sadeghian then states that written contracts may consist of multiple documents, and he argues that the handwritten contract and the check, executed at or near the same time for the same purpose and in the course of the same transaction, "should be considered together for what they clearly are[—]a contract." But Sadeghian fails to explain how considering these documents together shows the existence of a contract. He does not argue that these two documents together contain all the material terms necessary for a contract, and even if the handwritten document contained all the necessary terms, Sadeghian points to no evidence showing that Hudspeth accepted the offer.

Finally under this point, Sadeghian states that an offer may be accepted by conduct, and he argues that he "was certainly justified in relying upon the conduct of [Hudspeth], for he had been a contractor for some 38 years . . . and to hear him utter otherwise is clearly unavailing." [Ellipses in original.] While Sadeghian's exact argument here is unclear, to the extent that he argues that the evidence shows that Hudspeth accepted an offer by conduct, he does not point out what acts of

---

[19] *See Brown v. Sabre, Inc.*, 173 S.W.3d 581, 588 (Tex. App.—Fort Worth 2005, no pet.) (noting that contract formation requires "an offer, an acceptance, a meeting of the minds, each party's conceding to the terms, and an execution and delivery of the contract with the intent that it be mutual and binding").

Hudspeth show that he accepted any offer from Sadeghian. The only evidence Sadeghian directs us to is the statement of Hudspeth that he accepted the check from Sadeghian. As we have noted, Hudspeth explained that he cashed the check and passed the money to Vasquez as a favor to Sadeghian after expressly refusing to agree to enter into the contract offered by Sadeghian. In other words, while the evidence could support a finding that the parties had an oral agreement for Hudspeth to hold the funds and distribute them to Vasquez, the evidence pointed out by Sadeghian does not establish as a matter of law the existence of an agreement for Hudspeth to manage Vasquez's work on the terms alleged by Sadeghian.[20] Accordingly, we overrule Sadeghian's third point.

*Fraud*

Although Sadeghian does not reference Hudspeth's fraud claim in the statement of his second point and does not include any legal analysis about whether Hudspeth's fraud claim as pled in the county court was a new ground of recovery, he does mention in one sentence under that point that Hudspeth altered his fraud claim from the one pled in the justice court.[21] Civil procedure rule 574a provides that on appeal to a county court from a justice court, "[e]ither party may plead any new matter in the county . . . court which was not presented in the court below, but

---

[20]*See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) ("When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue.").

[21]*See* Tex. R. App. P. 38.1(i); *Devine*, 130 S.W.3d at 514.

14

no new ground of recovery shall be set up by the plaintiff, nor shall any . . . counterclaim be set up by the defendant."[22]  While a new ground of recovery may not be added on appeal, additional causes of action, claiming the same damages and based on the same conduct alleged in the justice court, are not new grounds of recovery in violation of rule 574a.[23]

The conduct of Sadeghian on which Hudspeth based his fraud counterclaim in the county court was the same conduct he alleged in his pleadings in the justice court.  Hudspeth always asserted that Sadeghian was falsely claiming that Hudspeth had agreed to a written contract and that Sadeghian brought his breach of contract claim only to harass Hudspeth.  Accordingly, to the extent that Sadeghian argues that the trial court should not have submitted the fraud question to the jury because it was a new ground of recovery not asserted in the justice court, we overrule the remainder of Sadeghian's second point.

In his fourth point, Sadeghian argues that "[t]he evidence does not support the jury's answers to questions regarding fraud."  Under this point, he first states that Hudspeth cannot show any evidence of the elements of fraud "in any of his many

---

[22]Tex. R. Civ. P. 574a.

[23]See Harrill v. A.J.'s Wrecker Serv., Inc., 27 S.W.3d 191, 195 (Tex. App.—Dallas 2000, pet. dism'd w.o.j.).

15

and varied pleadings." But Hudspeth was not required to provide evidence of fraud in his pleadings.[24]

To the extent that Sadeghian argues that the evidence produced at trial is insufficient to support a fraud finding, his arguments under this point are inadequately briefed.[25] Sadeghian argues that Hudspeth relied on Sadeghian's filing of the lawsuit to establish fraud but that communications made in the course of a judicial proceeding will not serve as the basis for an action for libel or slander. But Hudspeth did not sue Sadeghian for libel or slander, and therefore this argument has no relevance to Sadeghian's sufficiency complaint.

Sadeghian next argues that Hudspeth "tried to argue that the actionable representation was an amorphous belief that all [Hudspeth] was to do was pass the money along" and that such belief "will not satisfy the standards for justifiability established by the courts of this state." Although Sadeghian does not elaborate on his argument, we understand Sadeghian to mean that Hudspeth believed that Sadeghian gave him a check only to pass on to Vasquez rather than to form an offer to contract (which Sadeghian contends Hudspeth accepted, forming the basis of Sadeghian's breach of contract suit) but that Hudspeth's belief was not justified. But Sadeghian does not explain why Hudspeth's belief could not be justifiable. Sadeghian states that a person may not justifiably rely on a representation "if there

---

[24]*See* Tex. R. Civ. P. 85, 97 (describing the requirements for a defendant's answer and counterclaims).

[25]*See* Tex. R. App. P. 38.1(i); *Fredonia State Bank*, 881 S.W.2d at 284.

16

are 'red flags' indicating such reliance is unwarranted," but he does not explain what "red flags" made Hudspeth's reliance unjustified and points to nothing in the record from which we may conclude that Hudspeth's reliance was unjustified.

Finally, Sadeghian argues that Hudspeth did not show any evidence of causation because Hudspeth's "claimed injuries arise only from the filing of this case," and, therefore, Sadeghian is covered by the litigation privilege. But the case he cites for this proposition held that "[c]ommunications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander."[26] Again, Hudspeth did not sue Sadeghian for libel or slander. To the extent that Sadeghian attempts to argue that he is shielded by the litigation privilege under which *attorneys* cannot be held liable on a cause of action for wrongful litigation conduct, such protection extends to his attorney, not to him.[27] Sadeghian makes no other argument for why the evidence does not support the jury's fraud finding. He cites to no applicable case law suggesting that his actions cannot support a fraud claim.[28] Accordingly, we overrule Sadeghian's fourth point.

---

[26] *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982).

[27] *See Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 408 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that acts taken by an attorney to facilitate the rendition of legal services to a party were not a basis for a fraud claim against the attorney by a third party absent legal privity or an independent duty to and justifiable reliance by the third party); *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 288 (Tex. App.—Fort Worth 1997, writ denied) ("Under Texas law, attorneys cannot be held liable for wrongful litigation conduct.").

[28] *See* Tex. R. App. P. 38.1(i); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (stating that "we know of no

*Sanctions*

In his sixth point, Sadeghian asserts that "[t]he evidence, and procedures used in this case, do not support, or warrant, the jury's answers to questions regarding the filing of a frivolous, baseless, or groundless lawsuit in bad faith or for the purposes of harassment." In a section heading, he asserts that Hudspeth did not establish all of the elements necessary for sanctions.

Sadeghian's argument under this point, however, does not address the evidence produced by Hudspeth at trial and why Sadeghian believes it did not show good cause for an award of sanctions, nor does he discuss what a party must show to be entitled to sanctions. Rather, Sadeghian argues that before awarding sanctions, the trial court must hold a pretrial evidentiary hearing "to make the necessary factual determinations about the party's or attorney's motives and credibility" and that without such a hearing, "the trial court has no evidence before it to determine that a pleading was filed in bad faith or to harass." Sadeghian seems to be impliedly arguing that a trial court may consider only evidence produced at a pretrial sanctions hearing and that evidence produced at trial may not be used to satisfy the good cause requirement for a sanctions award. Sadeghian concludes by stating (with no citation to authority)[29] that the issue's submission to the jury was a process calculated to lead to improper findings.

---

authority obligating us to become advocates for a particular litigant through performing [his] research and developing [his] argument for [him]") (citation omitted).

[29] *See* Tex. R. App. P. 38.1(i).

18

We review a trial court's order of sanctions for abuse of discretion.[30] A trial court's imposition of sanctions constitutes an abuse of its discretion when the court based its order on an erroneous view of the law or a clearly erroneous assessment of the evidence.[31] Any error in imposing sanctions, however, will not be set aside on appeal unless the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal.[32] And although a trial court commits error if it submits a question of law to the jury, "the error is harmless if the jury answers the question of law correctly or if it can be deemed immaterial and disregarded by the trial court."[33]

Texas law provides more than one basis for sanctioning a party's conduct. In addition to a trial court's inherent authority to sanction parties for bad faith abuses of

---

[30]*Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

[31]*Monroe v. Grider*, 884 S.W.2d 811, 816 (Tex. App.—Dallas 1994, writ denied).

[32]*See* Tex. R. App. P. 44.1(a); *Bloom v. Graham*, 825 S.W.2d 244, 247 (Tex. App.—Fort Worth 1992, writ denied) (holding that the trial court's failure to comply with the requirements of rule 13 was harmless under the circumstances); *see also Bloodworth v. Aden*, No. 01-05-00796-CV, 2007 WL 1845111, at *3 (Tex. App. — Houston [1st Dist.] June 28, 2007, pet. denied) (mem. op.) (holding that under the circumstances, the trial court's submission of the issue of sanctions to the jury was harmless).

[33]*Grohman v. Kahlig*, 318 S.W.3d 882, 887–88 (Tex. 2010) (deciding that "[t]he trial court committed harmless error by submitting the question to the jury because the jury answered it as the trial court should have"); *see also McCain v. NME Hospitals, Inc.*, 856 S.W.2d 751, 757 (Tex. App.—Dallas 1993, no writ) (noting that the trial court did not describe good cause or the particulars required by rule 13 in its sanction orders and examining the record to determine if it would support the trial court's judgment).

the judicial process,[34] several Texas statutes provide trial courts with the authority to sanction parties for various abusive behaviors.[35] If a party files pleadings that lack a reasonable basis in fact or law, chapters 9 and 10 of the civil practice and remedies code and civil procedure rule 13 each provide a basis on which a trial court may sanction a party for filing the pleadings.[36]

Sadeghian is correct that in some cases, a party may waive its right to sanctions if the party does not obtain a pretrial ruling on the matter. A party waives any claim for sanctions based on pretrial discovery abuses if the party does not obtain a pretrial ruling on the discovery disputes.[37] But this case does not involve discovery abuses, and the trial court was within its discretion to postpone a determination of whether the suit was groundless and brought in bad faith or for

[34]*See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) ("A court has the inherent power to impose sanctions on its own motion in an appropriate case."); *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–99 (Tex. 1979) (recognizing that a court has inherent power "which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity"); *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 446 (Tex. App.—Austin 2004, pet. denied) (noting that "[e]ven in the absence of an applicable rule or statute, a court has the inherent authority to sanction parties for bad-faith abuses").

[35]*See* Tex. R. Civ. P. 13, 215.2; Tex. Bus. & Comm. Code Ann. § 17.50(c) (West 2011); Tex. Civ. Prac. & Rem. Code Ann. §§ 9.012, 10.004; *see also Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) ("Chapters 9 and 10 of the Texas Civil Practice and Remedies Code and rule 13 of the Texas Rules of Civil Procedure allow a trial court to sanction an attorney or a party for filing motions or pleadings that lack a reasonable basis in fact or law.").

[36]Tex. R. Civ. P. 13; Tex. Civ. Prac. & Rem. Code Ann. §§ 9.012, 10.004; *see also Low*, 221 S.W.3d at 614.

[37]*Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993).

purposes of harassment until after the parties presented evidence at trial about Sadeghian's claims and his purpose in filing suit.[38] For sanctions based on conduct other than discovery abuses that the party seeking sanctions knew about pretrial, courts of appeals have routinely upheld sanctions awarded during or after trial.[39]

Here, both sides presented evidence at trial about the events giving rise to the suit and about Sadeghian's motive in filing suit against Hudspeth. We therefore find unpersuasive Sadeghian's argument that because the trial court did not hold a pretrial hearing, it had no evidence before it from which it could determine whether sanctions were appropriate.

Although Sadeghian cites no authority holding that the jury may not make the necessary findings about his motives in filing suit, we note that the Supreme Court of Texas has held that the question of whether a suit under the Deceptive Trade

---

[38]*See, e.g., Gibson v. Ellis*, 126 S.W.3d 324, 336 (Tex. App.—Dallas 2004, no pet.) (upholding a trial court's award of sanctions against Gibson and noting that the court had taken judicial notice of the evidence presented at trial in determining whether good cause existed to sanction Gibson).

[39]*See, e.g., Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 312 (Tex. 2000) (upholding a sanctions award based on a motion filed after judgment by construing the motion as a motion to modify the judgment); *Land v. AT & S Transp., Inc.*, 947 S.W.2d 665, 668 (Tex. App.—Austin 1997, no writ) (noting that trial court considered evidence presented at trial in determining whether to award sanctions); *Kutch v. Del Mar Coll.*, 831 S.W.2d 506, 509 (Tex. App.—Corpus Christi 1992, no writ) (holding that "Texas courts have inherent power to sanction for bad faith conduct during litigation").

Practices Act is groundless is a question of law for the trial court.[40] Courts have also held that whether a suit was brought in bad faith or for purposes of harassment are questions for the trial court to determine after hearing evidence and making findings based on that evidence.[41] Thus, the trial court in this case should not have submitted the question to the jury. Our analysis does not end here, however, because we generally do not reverse a judgment for trial court error if that error was harmless.[42]

At trial, both Hudspeth and Sadeghian presented testimony about the events giving rise to the lawsuit. For his part, Hudspeth testified that Sadeghian asked him to sign a handwritten agreement providing that, in exchange for being paid $200, he would manage Vasquez's work on the property. Hudspeth expressly declined the offer, refusing to supervise Vasquez's work for that amount of money. But later, after receiving phone calls from both Sadeghian and Vasquez about disagreements

---

[40]*Donwerth v. Preston II Chrysler-Dodge, Inc.*, 775 S.W.2d 634, 637 (Tex. 1989) (holding that whether a claim is "groundless" under the deceptive trade practices act is a question of law).

[41]*See Rodriguez v. MumboJumbo, L.L.C.*, 347 S.W.3d 924, 926 (Tex. App.— Dallas 2011, no pet.) (noting that in determining whether a party's actions are sanctionable, the trial court acts as the fact finder and as such weighs the evidence and makes reasonable deductions therefrom); *Randolph v. Walker*, 29 S.W.3d 271, 278 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (holding that the trial court did not abuse its discretion in determining facts at the rule 13 hearing); *N.Y. Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex. App.—Dallas 1993, no writ) ("Rule 13 requires *the trial court* to hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the groundless petition.") (emphasis added).

[42]*See* Tex. R. App. P. 44.1.

they had about payments and the speed of the work, he agreed as a favor to take some money from Sadeghian and pass it on to Vasquez as an intermediary. Hudspeth received $3,000 from Sadeghian, most of which he passed on to Vasquez as Vasquez completed repairs or incurred expenses, and the remainder of which he attempted to return to Sadeghian.

At some point soon after Vasquez began work on the property, Sadeghian kicked Vasquez off the job. Hudspeth tried to give the rest of the money that he had received for Vasquez back to Sadeghian, but Sadeghian refused to take it. Instead, Sadeghian demanded that Hudspeth pay him $8,900—the amount for which Vasquez had contracted with Sadeghian to do the work on the property—plus the money that Hudspeth had already passed on to Vasquez on behalf of Sadeghian. After Sadeghian made several unsuccessful phone calls to Hudspeth demanding payment, he showed up at Hudspeth's house with his son-in-law and once again demanded the money. Sadeghian threatened Hudspeth physically and threatened to take his house and possessions and make Hudspeth's life "a living hell" if he did not pay Sadeghian the money he demanded. Hudspeth refused to pay, and subsequently Sadeghian filed this suit claiming that Hudspeth had breached the very contract that Hudspeth had refused to sign. Then, a few months before the jury trial in the county court, Sadeghian ran into Hudspeth outside the courthouse and told Hudspeth that he should settle because Sadeghian would not stop the litigation.

Hudspeth also presented testimony from Darrel Bartkowiak, Sadeghian's former employee. Bartkowiak testified that in the course of his employment, he had

23

been asked "to embellish work that had been done or that was going to be done on some insurance," "to inflate estimates on some . . . properties," and once to put a property in his name "to claim that [Sadeghian] was an innocent owner of a particular property that the City of McKinney was going to go after him for some substandard work that was unpermitted."

Bartkowiak also testified about his knowledge of Sadeghian's "practice of filing lawsuits as a form of intimidation." He testified that Sadeghian had "bragged on more than one occasion" about using the legal system "to his advantage to gain [the] upper hand on individuals and crush individuals in regard to the fact that he had so much money that he could do this forever and that he just ran the clock on most people with legal bills and legal proceedings." He stated that Sadeghian told him that he filed lawsuits as a way to make money.

This evidence is sufficient to support a finding that Sadeghian's pleadings were filed in bad faith or for purposes of harassment.[43] The evidence also supports a conclusion that Sadeghian's suit had no basis in law and was not warranted by a good faith argument for the extension, modification, or reversal of existing law, in

_____

[43] *See Pearson v. Stewart*, 314 S.W.3d 242, 248 (Tex. App.—Fort Worth 2010, no pet.) (stating that the term "harass" describes "words, gestures, and actions that tend to annoy, alarm, and verbally abuse another person" and that "bad faith" is "the conscious doing of a wrong for a dishonest, discriminatory, or malicious purpose"); *see also Monroe*, 884 S.W.2d at 818–19 (noting the dishonest, discriminatory, or malicious purpose standard applies to claims under the deceptive trade practices act and holding that a lesser standard should apply for determining bad faith under rule 13 and "for rule 13 purposes, a party acts in bad faith when discovery puts him on notice that his understanding of the facts may be incorrect and he does not make a reasonable inquiry into the facts before filing a pleading").

other words, that the suit was groundless.[44]  Accordingly, because the evidence

supports the judgment, the error in submitting the question to the jury was

harmless.[45]  And we point out that Sadeghian does not complain either that the

judgment did not specify the good cause on which the sanctions were based (nor

did he object on that ground in the trial court)[46] or that the sanctions imposed were

not appropriate.[47]  We therefore expressly do not consider whether there is a direct

relationship between the offensive conduct and the sanction imposed, whether it is

excessive,[48] or whether the trial court's failure to specify the particulars of a good

---

[44] *See* Tex. R. Civ. P. 13.

[45] *See, e.g., Bloodworth*, 2007 WL 1845111, at *3 (holding that the trial court's submission of the issue of sanctions to the jury was harmless).

[46] *See Bloom v. Graham*, 825 S.W.2d 244, 247 (Tex. App.—Fort Worth 1992, writ denied) (holding that the appellant presented nothing for review on his argument that the trial court's sanction order did not set out the particulars for good cause because the record did not reflect that he filed any motion requesting that the trial court be more specific as to good cause or its particulars).

[47] *Cf. Low*, 221 S.W.3d at 620–22 (stating that a sanction generally cannot be excessive or assessed without appropriate guidelines and that "the absence of an explanation of how a trial court determined that amount of sanctions when those sanctions are especially severe is inadequate," and concluding that the trial court was within its discretion to award the sanctions, but, because the court could not determine the basis of the $50,000 sanction in that case, reversing and remanding "in the interest of justice to allow the parties to present evidence responsive to our guidelines, if necessary, and to allow the trial court to consider the amount of the penalty imposed in light of the guidelines in this opinion").

[48] *See GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 731 (Tex. 1993) (stating that the requirement that rule 13 sanctions be "appropriate" is the equivalent of rule 215's requirement that they be "just"); *TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (holding that whether an imposition of sanctions is "just" is measured by whether a direct relationship exists between the offensive

cause for sanctions was harmful error.[49]  We further note that although Hudspeth

sought sanctions by way of a counterclaim[50] and that the trial court referred to the

sanctions as "damages," Sadeghian does not argue that this procedure was not the

proper vehicle for pursuing sanctions or that sanctions may not be awarded as

damages.[51]  We overrule Sadeghian's sixth point.

Sadeghian's seventh and final point is that the evidence does not support the

jury's answer regarding attorney's fees.  Hudspeth's attorney testified about his level

of experience, his hourly rate, and the amount of time that he spent on the litigation.

He testified that the hourly rate he was charging Hudspeth was reasonable and was

conduct and the sanction imposed and whether it is excessive, that is, whether it more severe than necessary to satisfy its legitimate purposes); *Woodall v. Clark*, 802 S.W.2d 415, 418 (Tex. App.—Beaumont 1991, no writ) (affirming trial court's sanction order because, among other reasons, the appellant made no complaint on appeal that the trial court's order was unjust).

[49]See *Bloom*, 825 S.W.2d at 247 (holding that the appellant presented nothing for review on his argument that the trial court's sanction order did not set out the particulars for good cause because the record did not reflect that he filed any motion requesting that the trial court be more specific as to good cause or its particulars and that any error in the trial court's failure to set out the particulars of good cause in its sanctions order was harmless).

[50]*See N.Y. Underwriters Ins. Co.*, 856 S.W.2d at 205 (assuming without deciding that a counterclaim for affirmative relief under rule 13 was an available method to bring a motion for sanctions under that rule); *see also* Tex. R. Civ. P. 71 ("When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated."); *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it.").

[51]*See Mantri v. Bergman*, 153 S.W.3d 715, 717 (Tex. App.—Dallas 2005, pet. denied) (stating that a request for sanctions is not an independent cause of action).

in fact lower than what he usually charged. He testified that that it was customary for an attorney in Denton County to bill at that rate for a person with the skill and judgment of his experience in this type of subject matter. And he introduced his billing records, which stated the work he had performed on the case and the amount of time he had spent on each task performed. This evidence supports the finding as to the reasonableness of the requested attorney's fees.[52]

Sadeghian's analysis under this point, however, does not challenge the sufficiency of the evidence to support the jury's finding. Instead, he argues that Hudspeth is not entitled to attorney's fees because attorney's fees are not recoverable on tort claims and Hudspeth did not segregate his attorney's fees among his claims and defenses.

Hudspeth did not claim a right to his attorney's fees based on his tort counterclaims. Instead, Hudspeth sought his attorney's fees as additional sanctions on the ground that Sadeghian's suit was frivolous and groundless and brought for purposes of harassment.[53] The trial court awarded the fees on that basis.

---

[52] *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). (discussing factors to consider in determining the reasonableness and necessity of attorney's fees); *see also In re A.S.M.*, 172 S.W.3d 710, 718 (Tex. App.—Fort Worth 2005, no pet.) (upholding award of attorney's fees as sanctions despite the lack of proof that the fees incurred were either reasonable or necessary); *Stites v. Gillum*, 872 S.W.2d 786, 797 (Tex. App.—Fort Worth 1994, writ denied) (same).

[53] *See* Tex. R. Civ. P. 13; *In re A.S.M.*, 172 S.W.3d at 717–18 (noting that rule 13 "provides that a party may seek sanctions against a party or counsel or both if the court determines that any pleading or motion is groundless and brought either in bad faith or for the purpose of harassment" and holding that under the

Sadeghian does not challenge the award of attorney's fees on this ground. Accordingly, we overrule Sadeghian's seventh point.

## Conclusion

Having sustained Sadeghian's first point in part, we modify the trial court's judgment to exclude the $6,000 damages award on Hudspeth's conversion claim. Having overruled the remainder of Sadeghian's issues, we affirm the trial court's judgment as modified.

PER CURIAM

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED: August 30, 2012

circumstances, the trial court did not abuse its discretion in awarding attorney's fees as sanctions).